**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BIGBAND NETWORKS, INC., | ) |
| | ) |
| Plaintiff and Counterclaim Defendant, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-00351 *** |
| | ) |
| IMAGINE COMMUNICATIONS, INC., | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant and Counterclaim Plaintiff. | ) |
| | ) |
| | ) |

**IMAGINE COMMUNICATIONS, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS FOR RELIEF**

Defendant and Counterclaim Plaintiff Imagine Communications, Inc. ("Imagine Communications") through its attorneys, hereby answers the Complaint of Plaintiff BigBand Networks, Inc. ("Plaintiff") as follows (the paragraph numbers in the Complaint and Answer correspond):

<u>**ANSWER**</u>

**PARTIES**

1.     Imagine Communications is without knowledge or information sufficient to form a belief as to the factual allegations of Paragraph 1 and on that basis denies them.

2.     Imagine Communications admits the allegations of Paragraph 2 except that its principal place of business is Cardiff-by-the-Sea, California.

**JURISDICTION AND VENUE**

3.     Imagine Communications admits the allegations of Paragraph 3.

**THE PATENTS**

4.     Imagine Communications admits that copies of U.S. Patent No. 6,937,619 ("the '619 patent"), U.S. Patent No. 6,999,477 ("the '477 patent"), and U.S. Patent

No. 7,058,087 ("the '087 patent") are attached as Exhibits 1, 2, and 3 of the Complaint. Imagine Communications is without knowledge or information sufficient to form a belief as to the remaining factual allegations of Paragraph 4 and on that basis denies them.

## THE ALLEGED INFRINGEMENT

5.     Imagine Communications denies the allegations of Paragraph 5.

6.     Imagine Communications denies the allegations of Paragraph 6.

7.     Imagine Communications denies the allegations of Paragraph 7.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Noninfringement)

1.     Imagine Communications is not infringing, has not infringed, nor will it infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '477 patent, the '087 patent, or the '619 patent (collectively "the Patents-in-Suit").

## SECOND AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

2.     An additional basis of non-infringement is that statements, representations, admissions, and amendments made to the U.S. Patent and Trademark Office ("PTO") during the prosecution of the applications that matured into the Patents-in-Suit, as well as the prior art, estops BigBand from asserting that the claims of said patents are infringed by any product of Imagine Communications.

## THIRD AFFIRMATIVE DEFENSE

### (Invalidity)

3.     The Patents-in-Suit and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, anticipation, obviousness, lack of enablement, lack of written description, indefiniteness, and misjoinder/nonjoinder of

named inventors in accordance with 35 U.S.C. §§ 101,102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

4.    The Patents-in-Suit are unenforceable because BigBand has unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

5.    The Patents-in-Suit and each of the claims thereof are unenforceable because of the patentees' inequitable conduct, as alleged more specifically in Imagine Communication's Counterclaims set forth below.

## SIXTH AFFIRMATIVE DEFENSE

### (Equitable Defenses)

6.    Imagine Communications is informed and believes that a reasonable opportunity for further investigation or discovery is likely to produce evidence showing, and Imagine Communications alleges, that the relief sought by Plaintiff is barred in whole or in part under the doctrines of equitable estoppel, laches, waiver, and/or implied license.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unenforceability and Bad Faith)

7.    The Patents-in-Suit are unenforceable because Plaintiff comes into Court with unclean hands.  Plaintiff has committed patent misuse by attempting to enforce patents it should reasonably know were not infringed and/or unenforceable with anticompetitive effects and purposes, and for the reasons set out in Imagine Communication's Counterclaims set forth below.

## COUNTERCLAIMS

## A.    GENERAL ALLEGATIONS

By and for its counterclaim against Counterdefendant BigBand Networks, Counterclaimant Imagine Communications alleges as follows:

1.    Imagine Communications is a Delaware corporation having its principal place of business in Cardiff by the Sea, California.

2.    Upon information and belief, as stated in the Complaint, BigBand Networks is a Delaware corporation having its principal corporate offices at 475 Broadway Street, Redwood City, California.

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because these counterclaims arise under the patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and under the Federal Declaratory Judgment Act, including 28 U.S.C. Sections 2201 and 2202.  Personal jurisdiction over BigBand Networks is proper because BigBand Networks is a resident of this district, and because BigBand Networks has already submitted to the jurisdiction of this Court in this matter by filing its Complaint against Counterclaimant here.

4.    Venue is proper in this District pursuant to 28 U.S.C. Section 1391 because BigBand Networks is a resident of this District and has sued Counterclaimant in this District in this action.

5.    This Counterclaim is for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

6.    Imagine Communication's video processing and multiplexing technology involves a highly unique and novel method of simultaneously improving bandwidth efficiency and video quality fundamentally different from and superior to legacy techniques utilized previously.

7.    BigBand Networks has claimed to be the owner of record of U.S. Patent No. 6,937,619 ("the '619 patent"), U.S. Patent No. 6,999,477 (the '477 patent"), and

U.S. Patent No. 7,058,087 ("the '087 patent," collectively the "Patents-in-Suit") and has brought suit alleging that Imagine Communications infringed directly and indirectly (including contributory and inducement of infringement) the Patents-in-Suit.  Imagine Communications disputes these contentions and an actual and justifiable controversy exists between Imagine Communications and BigBand Networks as to the validity, infringement, and enforceability of the Patents-in-Suit.

8.    An actual controversy exists between BigBand and Imagine Communications concerning the Patents-in-Suit, which requires a declaration of rights by this Court.  This controversy relates to the alleged infringement, validity, and enforceability of the Patents-in-Suit.

**B.    GENERAL ALLEGATIONS RE:  INEQUITABLE CONDUCT**

9.    All of the named inventors in the Patents-in-Suit signed declarations under oath stating that:

> I acknowledge the duty to disclose all information known to me to be material to patentability as defined in Title 37, Code of Federal Regulations, Section 1.56.

10.    The above oaths were made under penalty of civil and criminal penalties as follows:

> I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

11.    The inventors were well aware of their obligations under Rule 1.56 which was part of their filing and attached as Appendix B to the declarations they signed.

12.    The duty to disclose material facts which the inventors of the Patents-in-Suit swore to uphold is set out in patent Rule 1.56 which was part of the prosecution history, attested by all of the named inventors and reads as follows:

§ 1.56 Duty to disclose information material to patentability.

(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. <u>Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.</u> The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned.

* * * * *

However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:

(1) <u>Prior art cited in search reports of a foreign patent office in a counterpart application, and</u>

(2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

(1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatentability relied on by the Office, or

(ii) Asserting an argument of patentability.

A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent

application within the meaning of this section are:

(1) Each inventor named in the application;

(2) Each attorney or agent who prepares or prosecutes the application; and

(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

(e) In any continuation-in-part application, the duty under this section includes the duty to disclose to the Office all information known to the person to be material to patentability, as defined in paragraph (b) of this section, which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application. . . . (Emphasis added.)

13.     There was a prior dispute between the companies which was settled by way of a "Release and Standstill Agreement" dated March 5, 2006.

14.     The March 5, 2006 Agreement included a mutual release which extinguished all prior possible claims and causes of action save for patent rights of either party.

15.     At the NCTA trade show in May 2007, BigBand's CEO advised Imagine Communication's CEO that there were possible issues of trade secret or patent infringement beyond those extinguished by the March 5, 2006 "Release and Standstill Agreement." Imagine Communication's CEO stated that he did not believe any existed but if BigBand disagreed, then the parties should "get the technical teams together and if there are infringement issues we can resolve them amicably without litigation." He invited Ron Oz, BigBand's CTO, to visit Imagine Communication's facilities to explain Imagine Communication's technology in sufficient detail to reassure BigBand there could not possibly be any infringement. The offer was not responded to. Mr. Howard tried again to resolve any differences after this suit was filed by his letter of

June 13, 2007 to BigBand's CEO which was not answered.  A follow-up call was also not returned.

16.     These conciliatory steps were made because Imagine Communication's technology had not yet been rolled out and it was believed that any perceptions of infringement could only have been based on insufficient information and speculation. Nonetheless, on information and belief, BigBand filed suit on the eve of Imagine Communication's refinancing and without any proper knowledge of the details of Imagine Communication's revolutionary technology and without any good faith basis for such suit, with the knowledge and ulterior motive and purpose to harm Imagine Communications by intentionally disrupting its funding, delaying or preventing its revolutionary product from coming to market, and harming competition in this technology market.

## FIRST COUNTERCLAIM

### (Unenforceability of the '477 patent; Inequitable Conduct)

17.     Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 16 of this Counterclaims section as though fully set forth herein.

18.     U.S. Patent No. 6,999,477 entitled "METHOD AND SYSTEM FOR PROVIDING MULTIPLE SERVICES TO END-USERS"  issued from Application Serial No. 09/841,579.  This application was filed on April 23, 2001 and is a Continuation-In-Part of U.S. Patent 6,434,141.  The patent issued February 14, 2006 and names inventors Oz and Field.

19.     This application was examined by Examiner Alexander O. Boakye and prosecuted by Blakely, Sokoloff, Taylor and Zafmann LLP.

20.     The subject matter taught in this patent is related to a method and system for dynamic provisioning of service conveying packets to groups of end-users. This patent is additionally directed towards statistical multiplexing.

21.     There are 12 independent claims 1-9, 16, 18, and 28.  The patent contains a total of 44 claims.

22.     An International Search Report for co-pending PCT application PCT/US00/16654 was published 14 February 2002 for International Publication WO 00/79794.  The references found in this report were not disclosed to the US Examiner. These references included US Patent No. 5,481,542 entitled "Interactive Information Services Control System," which issued January 02, 1996 naming inventors Logston, Wasilewski, Addington, and Wall.

23.     In prosecution of the '477 patent the examiner cited the combination of 6,128,649 ("Smith") and 6,141,339 ("Kaplan").  The applicant did not traverse this rejection but amended claims.

24.     From the time of the '579 application's filing through issuance by the PTO of the '477 patent, each of the patentees had a duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to United States patent laws and regulations, including 37 C.F.R. § 1.56(a).

25.     Failure to disclose these references to the PTO was an omission by the patentees in contravention of the patentees' duties to the PTO during the prosecution of the Patents-in-Suit.

26.     The patentees had knowledge of, and intentionally withheld this art from the PTO with intent to deceive the PTO.

27.     These omissions were in contravention of the patentees' duties to the PTO during the prosecution of the Patents-in-Suit.

28.     These omissions were material to patentability because, among other things, they were relevant to the questions of whether the claims of the Patents-in-Suit, would have been novel or obvious to one of ordinary skill in the art and/or satisfied the utility requirement of 35 U.S.C. § 101 and because, *inter alia*, there is a substantial likelihood that a reasonable examiner would have considered the references and examiner

rejection important in deciding whether to allow the Patents-in-Suit and, *inter alia*, because many of these references either alone or in combination with other art, teach or imply elements of, or render obvious, various claims in the '477 patent.

29.    Imagine Communications is entitled to a declaratory judgment that the '477 patent is unenforceable.

## SECOND COUNTERCLAIM

### (Unenforceability of the '619 patent; Inequitable Conduct)

30.    Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 29 of this Counterclaims section as though fully set forth herein.

31.    U.S. Patent No. 6,937,619 entitled "METHOD AND SYSTEM FOR COMPARISON-BASED PRIORITIZED BIT RATE CONVERTER," issued from Application Serial No. 09/870,056.  This application was filed May 29, 2001.  The patent issued August 30, 2005 and names inventors Strasman, Oz, Leventer, Lutsker, Assouline and Hildeshaim.

32.    This application was examined by Examiner Frank Duong and prosecuted by Blakely, Sokoloff, Taylor and Zafmann LLP.

33.    The subject matter taught in this patent is related to a system and methods for providing a multiplexed sequence that includes at least one sequence of basic media data units/modified basic data units.

34.    There are three independent claims, 1, 56, and 110.  The patent contains a total of 168 claims, many of the claims are in multiple dependent form.

35.    During prosecution of the related '477 patent Examiner Boakye issued an Office Action on February 02, 2005.  This action included an obviousness rejection under 35 U.S.C. § 103 on the basis of U.S. patents 6,141,339 and 6,128,649 as follows:

> Claims 1, 5, 8 and 12 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kaplan et al. (US patent # 6,141,339) in view of smith et al. (US patent # 6,128,649).
>
> Regarding claims 1, 8 and 12, Kaplan teaches a router, operative to

receive service conveying packets and to provide to each group of end-users group associated service conveying packets (column 15, lines 61-column 16, lines 1-18); a session manager, coupled to the router, the session manager providing routing instructions to the router (column 6, lines 41-43; in Fig. 4 ATM switch 441 corresponding to the claimed router is coupled to the session manager 442). Furthermore, Kaplan teaches that at least some of the service conveying packets comprising media stream (column 17, lines 37-44). Kaplan differs from the claimed invention in that Kaplan does not disclose dynamically selecting group of associated service conveying packets out of the received service conveying packets. Smith from the same field of endeavor teaches dynamically selecting group of associated service conveying packets out of the received service conveying packets (column 3, lines 35-36). One of the ordinary skill in the art would have been motivated to incorporate dynamically selected group of associated service conveying packets out of the received service conveying packets in the communication network of Kaplan in order to enable user to concentrate on the content and not the form of presentation. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to incorporate dynamically selecting group of associated service conveying packets out of the received service conveying packets such as the one taught by Smith into the communications network of Kaplan with the motivation being that it provides capability for the system to enable user concentrate on the content not the form of presentation, thus enhancing performance.

Regarding claim 5, Kaplan teaches that at least one media signals are MPEG compliant (column 6, lines 7-12).

These patents, Examiner Boakye's analysis, and the existence of the application leading to the '477 patent were withheld from Examiner Duong during the prosecution of the '619.

36.     The patent family that includes the '477 patent stems from and claims priority to the application that led to U.S. Patent No. 6,434,141. In this family there were three International Search Reports on related international applications. BigBand withheld the existence of these international applications, the search reports, and the cited art from these reports from Examiner Duong.

37.     The search report for International Publication WO 00/72601 was issued on July 21, 2001. It contained U.S. Patent No. 6,014,694 entitled "System for adaptive video/audio transport over a network" which issued January 11, 2000 naming inventors Aharoni, Khirman, Taits, and Ariel; and U.S. Patent No. 5,742,343 entitled " Scalable

encoding and decoding of high-resolution progressive video" issued April 21, 1998 naming inventors Haskell and Puri. This search report and these patents were withheld from Examiner Duong.

38.    The search report for International Publication WO 00/79794 was issued on July 30, 2001. It contained U.S. Patent No. 5,481,542 entitled "Interactive information services control system" issued January 02, 1996 naming inventors Logston, Wasilewski, Addington, and Wall; U.S. Patent No. 5,929,850 entitled "Interactive television system and method having on-demand web-like navigational capabilities for displaying requested hyperlinked web-like still images associated with television content," issued July 27, 1999 naming inventors Broadwin and Haass; U.S. Patent No. 5,548,532 entitled "Apparatus and method for formulating an interactive TV signal," issued August 20, 1996 naming inventors Menand, Joseph, and Jessup; U.S. Patent No. 5,742,623 entitled "Error detection and recovery for high rate isochronous data in MPEG-2 data streams," issued April 21, 1998 naming inventors Nuber, and Moroney; U.S. Patent No. 5,734,432 entitled "Method of incorporating a variable rate auxiliary data stream with a variable rate primary data stream" issued March 31, 1998 naming inventors Netravali and Petajan; and U.S. Patent No. 5,233,606 entitled "Arrangement for controlling shared-buffer-memory overflow in a multi-priority environment," issued August 03, 1993 naming inventors Pashan and Spanke. Further references included publications entitled "MCNS/DOCSIS MAC CLEARS THE PATH FOR THE CABLE-MODEM INVASION," Electronic Design, US, Penton Publishing, Cleveland OH, Vol. 45, no. 27, 1 December 1997. This search report, and the references it contained were withheld from Examiner Duong.

39.    The search report for International Publication WO 00/72509 was issued on October 26, 2001. It contained U.S. Patent No.  5,561,669 entitled "Computer network switching system with expandable number of ports," issued October 01, 1996 naming inventors Lenney and Chin and U.S. Patent No. 6,081,519 entitled "In-home

communication system," issued June 27, 2000 naming inventor Petler; International Publication WO 98/10541 entitled "BROADBAND COMMUNICATION SYSTEM FOR HIGH-SPEED INTERNET ACCESS" published March 03, 1998 naming inventors Enns, Moura, Gronski, Neelmegh, Kim, Bieraum, and Rubin;  and International Publication WO 99/09689 entitled "SYSTEM, DEVICE, AND METHOD FOR SCHEDULING IN A COMMUNICATION NETWORK" published February 25, 1999 naming inventors Ruszczyk, Lee, and Chlamtac; and the following publications: "ADAPTIVE DIGITAL ACCESS PROTOCOL: A MAC PROTOCOL FOR MULTI-SERVICE BROADBAND ACCESS NETWORKS" IEEE Communications Magazine, IEEE Service Center. Piscataway NJ, Vol. 34, no. 3, 1 March 1996, and "BROADBAND CPN DEMONSTRATOR USING WAVELENGTH AND TIME DIVISION MULTIPLEXING," Electronics and Communication Engineering Journal, IEEE London, GB, vol. 4 no. 4, 01 August 1992. This search report, and the references it contained were withheld from Examiner Duong.

       40.    From the time of the '056 application's filing through to the issuance by the PTO of the '619 patent, each of the patentees had a duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to United States patent laws and regulations, including 37 C.F.R. § 1.56(a).

       41.    Failure to disclose these references and examiner rejection to the PTO was an omission by the patentees in contravention of the patentees' duties to the PTO during the prosecution of the Patents-in-Suit.

       42.    The patentees withheld this art from the PTO with intent to deceive the PTO.

       43.    The patentees had knowledge of, and intentionally withheld these publications from the PTO with intent to deceive the PTO.

44.     These omissions were in contravention of the patentees' duties to the PTO during the prosecution of the Patents-in-Suit.

45.     These omissions were material to patentability because, among other things, they were relevant to the questions of whether the claims of the Patents-in-Suit, would have been novel or obvious to one of ordinary skill in the art and/or satisfied the utility requirement of 35 U.S.C. § 101 and because, *inter alia*, there is a substantial likelihood that a reasonable examiner would have considered the references and examiner rejection important in deciding whether to allow the Patents-in-Suit and, *inter alia*, because many of these references either alone or in combination with other art, teach or imply elements of, or render obvious, various claims in the '619 patent.

46.     Imagine Communications is entitled to a declaratory judgment that the '619 patent is unenforceable.

### THIRD COUNTERCLAIM

### (Unenforceability of the '087 patent; Inequitable Conduct)

47.     Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 46 of this Counterclaims section as though fully set forth herein.

48.     U.S. Patent No. 7,058,087 entitled "METHOD AND SYSTEM FOR PRIORITIZED BIT RATE CONVERSION," issued from Application Serial No. 09/870,069.  This application was filed May 29, 2001.  The patent issued June 06, 2006 and names inventors Strasman, Oz, Leventer, Lutsker, Assouline and Hildeshaim.

49.     This application was examined by Examiner Khanh Dihn and prosecuted by Blakely, Sokoloff, Taylor and Zafmann LLP.

50.     The subject matter taught in this patent is related to a system and methods for providing a multiplexed sequence that includes at least one sequence of basic media data units/modified basic data units.

51.     There are three independent claims, 1, 72, and 135.  The patent contains a total of 185 claims, many of the claims are in multiple dependent form.

52.    During prosecution of the '447 patent Examiner Boakye issued an Office Action on February 02, 2005.  This action included an obviousness rejection under 35 U.S.C. § 103 on the basis of U.S. patents 6,141,339 and 6,128,649.

> Claims 1, 5, 8 and 12 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kaplan et al. (US patent # 6,141,339) in view of smith et al. (US patent # 6,128,649).
>
> Regarding claims 1, 8 and 12, Kaplan teaches a router, operative to receive service conveying packets and to provide to each group of end-users group associated service conveying packets (column 15, lines 61-column 16, lines 1-18); a session manager, coupled to the router, the session manager providing routing instructions to the router (column 6, lines 41-43; in Fig. 4 ATM switch 441 corresponding to the claimed router is coupled to the session manager 442).  Furthermore, Kaplan teaches that at least some of the service conveying packets comprising media stream (column 17, lines 37-44). Kaplan differs from the claimed invention in that Kaplan does not disclose dynamically selecting group of associated service conveying packets out of the received service conveying packets.  Smith from the same field of endeavor teaches dynamically selecting group of associated service conveying packets out of the received service conveying packets (column 3, lines 35-36).  One of the ordinary skill in the art would have been motivated to incorporate dynamically selected group of associated service conveying packets out of the received service conveying packets in the communication network of Kaplan in order to enable user to concentrate on the content and not the form of presentation. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to incorporate dynamically selecting group of associated service conveying packets out of the received service conveying packets such as the one taught by Smith into the communications network of Kaplan with the motivation being that it provides capability for the system to enable user concentrate on the content not the form of presentation, thus enhancing performance.
>
> Regarding claim 5, Kaplan teaches that at least one media signals are MPEG compliant (column 6, lines 7-12).

These patents, Examiner Boakye's analysis, and the existence of the application leading to the '477 patent were withheld from Examiner Dihn during the prosecution of the '087 patent.

53.    U.S. Patent No. 6,434,141 was cited by the Applicant to the Examiner in the '619 action, but even though the '619 and the '087 patents share an identical

disclosure and the subject matter of the claims is related enough to require a terminal disclaimer, the '141 patent was not provided to the Examiner in the '087 action.

54.    The patent family that includes the '477 patent stems from and claims priority to the application that led to U.S. Patent No. 6,434,141. In this family, there were three International Search Reports on related international applications. BigBand did not disclose the existence of these international applications, the search reports, nor the cited art from these reports to Examiner Dihn.

55.    The search report for International Publication WO 00/72601 was issued on July 21, 2001. It contained U.S. Patent No. 6,014,694 entitled "System for adaptive video/audio transport over a network" which issued January 11, 2000 naming inventors Aharoni, Khirman, Taits, and Ariel; and U.S. Patent Nor. 5,742,343 entitled " Scalable encoding and decoding of high-resolution progressive video" issued April 21, 1998 naming inventors Haskell and Puri. This search report and these patents were withheld from Examiner Dihn.

56.    The search report for International Publication WO 00/79794 was issued on October 26, 2001. It contained U.S. Patent No. 5,481,542 entitled "Interactive information services control system" issued January 2, 1996 naming inventors Logston, Wasilewski, Addington, and Wall; U.S. Patent No. 5,929,850 entitled "Interactive television system and method having on-demand web-like navigational capabilities for displaying requested hyperlinked web-like still images associated with television content," issued July 27, 1999 naming inventors Broadwin and Haass; U.S. Patent No. 5,548,532 entitled "Apparatus and method for formulating an interactive TV signal," issued August 20, 1996 naming inventors Menand, Joseph, and Jessup; U.S. Patent No. 5,742,623 entitled "Error detection and recovery for high rate isochronous data in MPEG-2 data streams," issued April 21, 1998 naming inventors Nuber, and Moroney; U.S. Patent No. 5,734,432 entitled "Method of incorporating a variable rate auxiliary data stream with a variable rate primary data stream" issued March 31, 1998 naming inventors

Netravali and Petajan; and U.S. Patent No. 5,233,606 entitled "Arrangement for controlling shared-buffer-memory overflow in a multi-priority environment," issued August 03, 1993 naming inventors Pashan and Spanke. Further references included publications entitled "MCNS/DOCSIS MAC CLEARS THE PATH FOR THE CABLE-MODEM INVASION," Electronic Design, US, Penton Publishing, Cleveland OH, Vol. 45, no. 27, 1 December 1997. This search report, and the references it contained were withheld from Examiner Dihn.

57.    The search report for International Publication WO 00/72509 was issued on October 26, 2001. It contained U.S. Patent No. 5,561,669 entitled "Computer network switching system with expandable number of ports," issued October 01, 1996 naming inventors Lenney and Chin and U.S. Patent No. 6,081,519 entitled "In-home communication system," issued June 27, 2000 naming inventor Petler; International Publication WO 98/10541 entitled "BROADBAND COMMUNICATION SYSTEM FOR HIGH-SPEED INTERNET ACCESS" published March 03, 1998 naming inventors Enns, Moura, Gronski, Neelmegh, Kim, Bieraum, and Rubin; and International Publication WO 99/09689 entitled "SYSTEM, DEVICE, AND METHOD FOR SCHEDULING IN A COMMUNICATION NETWORK" published February 25, 1999 naming inventors Ruszczyk, Lee, and Chlamtac; and the following publications: "ADAPTIVE DIGITAL ACCESS PROTOCOL: A MAC PROTOCOL FOR MULTI-SERVICE BROADBAND ACCESS NETWORKS" IEEE Communications Magazine, IEEE Service Center. Piscataway NJ, Vol. 34, no. 3, 1 March 1996, and "BROADBAND CPN DEMONSTRATOR USING WAVELENGTH AND TIME DIVISION MULTIPLEXING," Electronics and Communication Engineering Journal, IEEE London, GB, vol. 4 no. 4, 01 August 1992. This search report, and the references it contained were withheld from Examiner Dihn.

58.    From the time of the '069 application's filing through to the issuance by the PTO of the '087 patent, each of the patentees had a duty of candor and good faith to

disclose to the PTO all information known to that individual that was material to patentability, pursuant to United States patent laws and regulations, including 37 C.F.R. §1.56(a).

59.    Failure to disclose these references and examiner rejection to the PTO were omissions by the patentees that was in contravention of the patentees' duties to the PTO during the prosecution of the Patents-in-Suit.

60.    The patentees had knowledge of, and intentionally withheld these publications from the PTO with intent to deceive the PTO.

61.    The omissions were in contravention of the patentees' duties to the PTO during prosecution of the Patents-in-Suit.

62.    These omissions were material to patentability because, among other things, they were relevant to the questions of whether the claims of the Patents-in-Suit, would have been novel or obvious to one of ordinary skill in the art and/or satisfied the utility requirement of 35 U.S.C. § 101 and because, *inter alia*, there is a substantial likelihood that a reasonable examiner would have considered the references and examiner rejection important in deciding whether to allow the Patents-in-Suit and, *inter alia*, because many of these references either alone or in combination with other art, teach or imply elements of, or render obvious, various claims in the '087 patent.

63.    For each of the aforesaid reasons, Imagine Communications is entitled to a declaratory judgment that the '087 patent is unenforceable.

## FOURTH COUNTERCLAIM

### (Noninfringement of the '619 patent)

64.    Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 63 of this Counterclaims section as though fully set forth herein.

65.    Imagine Communications has not infringed, contributed to the infringement of, or induced the infringement of any claim of the '619 patent.

## FIFTH COUNTERCLAIM

### (Noninfringement of the '477 patent)

66.    Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 65 of this Counterclaims section as though fully set forth herein.

67.    Imagine Communications has not infringed, contributed to the infringement of, or induced the infringement of any claim of the '477 patent.

## SIXTH COUNTERCLAIM

### (Noninfringement of the '087 patent)

68.    Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 67 of this Counterclaims section as though fully set forth herein.

69.    Imagine Communications has not infringed, contributed to the infringement of, or induced the infringement of any claim of the '087 patent.

## SEVENTH COUNTERCLAIM

### (Invalidity of the '619 patent)

70.    Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 69 of this Counterclaims section as though fully set forth herein.

71.    The '619 patent is invalid for failure to comply with the requirements of the patent laws of the United States including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

## EIGHTH COUNTERCLAIM

### (Invalidity of the '477 patent)

72.    Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 71 of this Counterclaims section as though fully set forth herein.

73.    The '477 patent is invalid for failure to comply with the requirements of the patent laws of the United States including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

## NINTH COUNTERCLAIM

### (Invalidity of the '087 patent)

74.    Imagine Communications incorporates by reference its allegations in Paragraphs 1 through 73 of this Counterclaims section as though fully set forth herein.

75.    The '087 patent is invalid for failure to comply with the requirements of the patent laws of the United States including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

**WHEREFORE**, Defendant and Counterclaimant Imagine Communications. prays for the following judgment and relief:

A.    A declaration that Imagine Communications does not infringe the '619 patent;

B.    A declaration that the '619 patent is invalid;

C.    A declaration that the '619 patent is unenforceable;

D.    A declaration that Imagine Communications does not infringe the '477 patent;

E.    A declaration that the '477 patent is invalid;

F.    A declaration that the '477 patent is unenforceable;

G.    A declaration that Imagine Communications does not infringe the '087 patent;

H.    A declaration that the '087 patent is invalid;

I.    A declaration that the '087 patent is unenforceable;

J.    An award of Imagine Communications' reasonable costs and attorneys' fees pursuant to 35 U.S.C. § 285 and/or because this is a baseless lawsuit; and

K.      An award of such other and further relief as this Court may deem just and proper.

Date:  July 26, 2007                        _/s/ Mary B. Matterer_____
                                            MARY B. MATTERER (I.D. No. 2696)
                                            MORRIS JAMES LLP
                                            500 Delaware Avenue, Suite 1500
                                            Wilmington, DE  19801
                                            Telephone:  302-888-6800
                                            Facsimile:  302-571-1750
                                            Email:  mmatterer@morrisjames.com

OF COUNSEL:

JOHN M. BENASSI (Bar No. 74137)
ALEXANDER BRAINERD (Bar No. 42722)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA  92122-1246
Telephone:  858-450-8400
Facsimile:  858-450-8499
Email :  john.benassi@hellerehrman.com

PETER E. GRATZINGER (Bar No. 228764)
HELLER EHRMAN LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone:  213-689-0200
Facsimile:  213-614-1868
Email:  peter.gratzinger@hellerehrman.com


                                  Attorneys for Defendant and Counterclaim Plaintiff
                                  IMAGINE COMMUNICATIONS, INC.