IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIGBAND NETWORKS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> IMAGINE COMMUNICATIONS, INC., <br><br> Defendant and Counterclaim Plaintiff. | Civil Action No. 1:07-cv-00351 *** |

**DEFENDANT IMAGINE COMMUNICATIONS, INC.'S 30(B)(6)**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN pursuant to Federal Rule of Civil Procedure 30(b)(6) that Defendant IMAGINE COMMUNICATIONS, INC. ("IMAGINE") will take the deposition upon oral examination of Plaintiff BIGBAND NETWORKS INC. ("BIGBAND") commencing on January 22, 2008 at 9:00 a.m., or a date and time to be agreed upon, at the law offices of Heller Ehrman LLP, 4350 La Jolla Village Drive, San Diego, California 92122, and continuing from day to day thereafter, excluding weekends and holidays, until completed. The deposition will be recorded by a videographer and/or certified court reporter.

NOTICE IS HEREBY FURTHER GIVEN pursuant to Federal Rule of Civil Procedure 30(b)(6) that BIGBAND is required to designate one or more of its officers, directors, partners, managing agents or other such persons as are most qualified, knowledgeable, and competent to testify on its behalf as to all matters known or reasonably available to it with respect to the topics identified in Attachment A attached hereto, and for each person designated, to set forth the matters on which the person will testify in a written response to be served on or before October 3, 2007.

Further, IMAGINE hereby requests that the witness(es) designated to testify with respect to the topics attached hereto bring with them to the deposition the technical and operational specifications and documents relating to the BIGBAND products referenced in the deposition topic, which were called for production pursuant to Request For Production of Documents and Things.

*/s/ Mary Matterer*
MARY B. MATTERER
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 302-888-6800
Facsimile: 302-571-1750
Email: mmatterer@morrisjames.com

OF COUNSEL:

JOHN M. BENASSI (Bar No. 74137)
ALEXANDER BRAINERD (Bar No. 42722)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92122-1246
Telephone: 858-450-8400
Facsimile: 858-450-8499
Email : john.benassi@hellerehrman.com

PETER E. GRATZINGER (Bar No. 228764)
HELLER EHRMAN LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: 213-689-0200
Facsimile: 213-614-1868
Email: peter.gratzinger@hellerehrman.com

Attorneys for Defendant and Counterclaim Plaintiff
IMAGINE COMMUNICATIONS, INC.

## ATTACHMENT A

### DEFINITIONS

(a) "DOCUMENTS" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure and applicable case law, including but not limited to electronic files.

(b) "IMAGINE" means Imagine Communications, Inc., any corporate predecessor, and any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

(c) "BIGBAND," "YOU," or "YOUR" means BigBand Networks, Inc, any corporate predecessor, any joint venture to which it is or was a party, any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

(d) "RELATING TO" means referring to, mentioning, commenting on, reflecting, pertaining to, evidencing, showing, involving, describing, discussing, responding to, supporting, contradicting, rebutting, constituting in whole or in part, consisting of, addressing the subject matter of, or being a draft, copy or summary of, in whole or in part.

(e) "The '477 PATENT" means U.S. Patent No. 6,999,477.

(f) "The '087 PATENT" means U.S. Patent No. 7,058,087

(g) "The '619 PATENT" means U.S. Patent No. 6,937,619

(h) "The PATENTS-IN-SUIT" means the '477 PATENT, the '087 PATENT, and the '619 PATENT collectively.

(i) "PREDECESSORS" are any prior applications or patents to or through which the PATENTS-IN-SUIT claim priority.

(j) "SUCCESSORS" are any divisionals, continuations, and continuations-in-part of the PATENTS-IN-SUIT.

(k)  "FOREIGN COUNTERPARTS" are any patents or applications that are FOREIGN COUNTERPARTS to any of the PATENTS-IN-SUIT or their PREDECESSORS or SUCCESSORS.

(l)  "PRODUCT" means any product, apparatus, system, service, or method.

(m)  "ACCUSED PRODUCT" means any IMAGINE PRODUCT that YOU allege infringes one or more of the PATENTS IN SUIT.

(n)  The term "PERSON" shall include both natural PERSONS and corporate or other business entities, whether or not in the employ of a party, and the acts and knowledge of a PERSON are defined to include the acts and knowledge of that PERSON'S directors, officers, members, employees, representatives, agents, and attorneys.

(o)  The term "IDENTIFY" means, with regards to DOCUMENTS, to:

   i. describe the nature of the document (e.g., letter or memorandum);
   ii. state the date of the document and its bates or control numbers, if any;
   iii. identify the PERSON who sent and received the original and any copy of the document;
   iv. state in as much detail as possible the contents of the document; and
   v. state the manner and date of the disposition of the document.

(p)  The term "IDENTIFY," with respect to PERSONS, shall mean to state the PERSON'S:

   i. Individual, company, or corporate name;
   ii. last known address; and
   iii. last known phone number.

## 30(b)(6) Topics

### BigBand's Contentions

1.  YOUR factual basis for YOUR contention that the ACCUSED PRODUCTS infringe the asserted claims of the PATENT-IN-SUIT, including without limitation:

2

(a) All facts showing that the ACCUSED PRODUCTS contain a "session manager" or its equivalent as that term is used in the '477 PATENT and the identity of witnesses knowledgeable thereof.

(b) All facts showing that in the ACCUSED PRODUCTS, the aggregate bandwidth of received packets exceeds the bandwidth of the limited bandwidth media, as those terms are used in the '477 PATENT and the identity of witnesses knowledgeable thereof.

(c) All facts showing that the ACCUSED PRODUCTS "select basic media data units to be modified in response to a modification priority," or have an equivalent function, as those terms are used in the '619 PATENT and the identity of witnesses knowledgeable thereof.

(d) All facts showing that the ACCUSED PRODUCTS use a "modification priority" or its equivalent, as that term is used in the '619 PATENT and the '087 PATENT and the identity of witnesses knowledgeable thereof.

(e) All facts showing that the ACCUSED PRODUCTS use a "non addressable stream output port" or its equivalent, as that term is used in the '477 PATENT and the identity of witnesses knowledgeable thereof.

(f) All facts regarding YOUR claim charts served as Attachments A, B, and C to YOUR responses to Imagine's First Set of Interrogatories, including without limitation the factual basis for YOUR allegation that documents referenced in those charts reflect products made, used, sold, or offered for sale by IMAGINE and the identity of witnesses knowledgeable thereof.

2. The factual basis for YOUR allegation in Paragraph 5 of YOUR Complaint that IMAGINE has indirectly infringed the PATENTS-IN-SUIT, including without limitation the identity of all third parties whose infringement IMAGINE has induced or to whose infringement IMAGINE has contributed and the identity of witnesses knowledgeable thereof.

3. The factual basis of YOUR allegation in Paragraph 6 of YOUR Complaint that IMAGINE's alleged infringement is willful and deliberate and the identity of witnesses knowledgeable thereof.

4. The identity of all PERSONS who participated in any way in any analysis relating to YOUR allegations of infringement, and separately for each PERSON identified, the timing and substance of the analysis conducted and all DOCUMENTS or other information on which that PERSON relied.

5. The circumstances under which BIGBAND became aware of IMAGINE's financing efforts, including IMAGINE's intent to sell Series B Securities, including without limitation the date on which each executive and board member of BIGBAND first learned this information and the source from which he or she learned it.

6. DOCUMENTS and communications related to IMAGINE's financing efforts and IMAGINE's intent to sell Series B securities.

7. All facts and circumstances RELATING TO any non-privileged communications regarding YOUR intent to file this lawsuit and YOUR reasons for filing this lawsuit, including statements made to third parties.

8. Any communication with any third party regarding BIGBAND's intention to sue IMAGINE.

9. All facts RELATING TO any offer by IMAGINE to disclose information to YOU regarding its products prior to this lawsuit, including without limitation the communications described in Paragraph 15 of IMAGINE's Counterclaim and the identity of witnesses knowledgeable thereof.

10. All facts and circumstances RELATING TO any communications internally at BIGBAND or between BIGBAND and any third party referring or RELATING TO IMAGINE, its technology, solutions, or PRODUCTS and the identity of witnesses knowledgeable thereof.

11. To the extent not fully requested above, the IDENTIFICATION of persons, EMPLOYEES, and/or third parties involved in or knowledgeable about matters set forth in the topics above.

12. The DOCUMENTS or other information RELATING TO the matters set forth in the topics above, the IDENTITY of the custodian(s) of the document and the location(s) where the document was kept and/or stored in the ordinary course of business.

### BigBand Patents

13. The place and dates of conception and reduction to practice for each claim in the PATENTS-IN-SUIT, and all evidence showing or corroborating the dates identified, including without limitation the identity of all PERSONS with personal knowledge of those dates and all DOCUMENTS showing or corroborating those dates.

14. All PERSONS who contributed to the conception and reduction to practice of the claims in each asserted patent, and each PERSON'S contribution to that alleged invention.

15. Any texts, treatises, writings, or other DOCUMENTS that contributed to or influenced conception and reduction to practice of each asserted claim.

16. Any "secondary" indications of nonobviousness of the invention claimed, including but not limited to commercial success of the invention, long felt but unsolved needs met by the invention, failure of others to meet those needs, the scope of licensing of the patent, professional approval of the invention, and deliberate copying of the invention or laudatory statements by accused infringers.

17. Each PRODUCT developed, sold, or licensed by YOU that embodies, practices, or uses any of the alleged inventions claimed in the PATENTS-IN-SUIT, and which specific claims are embodied, practiced, or used by that PRODUCT.

18. Any disclosures to any third party of the subject matter of any PATENT-IN-SUIT prior to the application date of that patent, including without limitation any publication, presentation, or disclosure, and any DOCUMENTS showing that each disclosure was under express conditions of confidence.

19. The first sale offer for sale and public use of any product that embodies any alleged invention claimed, and documents relating thereto and the identity of witnesses knowledgeable thereof.

20. All reference materials, including without limitation books, publications, and computer software, that were used or relied upon by each of the inventors of the PATENTS-IN-SUIT during the conception, development, and reduction to practice of their alleged inventions.

21. Any DOCUMENT or thing that any person has suggested to BIGBAND is prior art or potential prior art to the PATENTS-IN-SUIT or that BIGBAND has considered to be prior art or potential prior art to the PATENTS-IN-SUIT.

22. The field of invention of each PATENT-IN-SUIT.

23. All facts and circumstances RELATING TO any interactions or communication between BIGBAND and any of the inventors of the PATENTS-IN-SUIT RELATING TO the YOUR Complaint, or to this action in general.

24. All facts and circumstances RELATING TO, and/or sufficient to IDENTIFY, YOUR contentions concerning the level of education, experience, and/or skill held by a person of ordinary skill in the art at the time of invention which is related to alleged inventions contained in PATENTS-IN-SUIT.

25. The IDENTITY all persons and/or employees involved in the conception, design, development, engineering, and testing of BIGBAND's products.

26. The IDENTITY of all locations involved in the conception, design, development, engineering, and testing of BIGBAND's products.

27. The IDENTIFICATION of persons, EMPLOYEES, and/or THIRD PARTIES involved in or knowledgeable about matters set forth in the topics above.

28. The DOCUMENTS or other information RELATING TO the matters set forth in the topics above, the IDENTITY of the custodian(s) of the document and the location(s) where the document was kept and/or stored in the ordinary course of business.

**Prosecution**

29. BIGBAND's reasons for not disclosing, including YOUR prosecution of the PATENTS IN SUIT.

30. BIGBAND's knowledge of and decision not to disclose prior art to the '477 PATENT during the prosecution of the '477 PATENT, including without limitation,

    (a) U.S. patent No. 6,141,339 to Kaplan et al.

    (b) U.S. patent No. 6,128,649 to Smith et al.

    (c) U.S. Patent No. 5,481,542 to Logston et al.

    (d) Digital Audio-Visual Council's DAVIC 1.4 Specification

    (e) ISO/IEC 13818 Annex H Switched Digital Broadcast Service

31. BIGBAND's knowledge of and decision not to disclose prior art to the '087 PATENT during the prosecution of the '087 PATENT, including without limitation,

    (a) U.S. patent No. 6,141,339 to Kaplan et al.

    (b) U.S. patent No. 6,128,649 to Smith et al.

    (c) U.S. Patent No. 6,434,141 to Oz et al.

    (d) U.S. patent No. 6,014,694 to Aharoni et al.

    (e) U.S. Patent No. 5,742,343 to Haskell

    (f) U.S. Patent No. 5,481,542 to Logston et al.

    (g) U.S. Patent No. 5,929,850 to Broadwin et al.

    (h) U.S. Patent No. 5,548,532 to Menand et al.

    (i) U.S. Patent No. 5,742,623 to Nuber et al.

    (j) U.S. Patent No. 5,734,432 to Netravali et al.

    (k) U.S. Patent No. 5,233,606 to Pashan et al.

    (l) "MCNS/DOCSIS MAC CLEARS THE PATH FOR THE CABLE-MODEM INVASION," Electronic Design, US, Penton Publishing, Cleveland OH, Vol. 45, no. 27, 1 December 1997.

    (m) U.S. Patent No. 5,561,669 to Lenney et al.

    (n) U.S. Patent No. 6,081,519 to Petler

(o) International Publication WO 98/10541 entitled "BROADBAND COMMUNICATION SYSTEM FOR HIGH-SPEED INTERNET ACCESS" published March 03, 1998 naming inventors Enns, Moura, Gronski, Neelmegh, Kim, Bieraum, and Rubin;

(p) International Publication WO 99/09689 entitled "SYSTEM, DEVICE, AND METHOD FOR SCHEDULING IN A COMMUNICATION NETWORK" published February 25, 1999 naming inventors Ruszczyk, Lee, and Chlamtac; and the following publications:

(q) "ADAPTIVE DIGITAL ACCESS PROTOCOL: A MAC PROTOCOL FOR MULTISERVICE BROADBAND ACCESS NETWORKS" IEEE Communications Magazine, IEEE Service Center. Piscataway NJ, Vol. 34, no. 3, 1 March 1996

(r) "BROADBAND CPN DEMONSTRATOR USING WAVELENGTH AND TIME DIVISION MULTIPLEXING," Electronics and Communication Engineering Journal, IEEE London, GB, vol. 4 no. 4, 01 August 1992.

(s) Digital Audio-Visual Council's DAVIC 1.4 Specification

(t) ISO/IEC 13818 Annex H Switched Digital Broadcast Service

32. BIGBAND's knowledge of and decision not to disclose prior art to the '619 PATENT during prosecution of the '619 PATENT, including without limitation,

(a) U.S. patent No. 6,141,339 to Kaplan et al.

(b) U.S. patent No. 6,128,649 to Smith et al.

(c) U.S. patent No. 6,014,694 to Aharoni et al.

(d) U.S. Patent No. 5,481,542 to Logston et al.

(e) U.S. Patent No. 5,929,850 to Broadwin et al.

(f) U.S. Patent No. 5,548,532 to Menand et al.

(g) U.S. Patent No. 5,742,623 to Nuber et al.

(h)  U.S. Patent No. 5,734,432 to Netravali et al.

(i)  U.S. Patent No. 5,233,606 to Pashan et al.

(j)  "MCNS/DOCSIS MAC CLEARS THE PATH FOR THE CABLE-MODEM INVASION," Electronic Design, US, Penton Publishing, Cleveland OH, Vol. 45, no. 27, 1 December 1997.

(k)  U.S. Patent No. 5,561,669 to Lenney et al.

(l)  U.S. Patent No. 6,081,519 to Petler

(m)  International Publication WO 98/10541 entitled "BROADBAND COMMUNICATION SYSTEM FOR HIGH-SPEED INTERNET ACCESS" published March 03, 1998 naming inventors Enns, Moura, Gronski, Neelmegh, Kim, Bieraum, and Rubin;

(n)  International Publication WO 99/09689 entitled "SYSTEM, DEVICE, AND METHOD FOR SCHEDULING IN A COMMUNICATION NETWORK" published February 25, 1999 naming inventors Ruszczyk, Lee, and Chlamtac; and the following publications:

(o)  "ADAPTIVE DIGITAL ACCESS PROTOCOL: A MAC PROTOCOL FOR MULTISERVICE BROADBAND ACCESS NETWORKS" IEEE Communications Magazine, IEEE Service Center. Piscataway NJ, Vol. 34, no. 3, 1 March 1996

(p)  "BROADBAND CPN DEMONSTRATOR USING WAVELENGTH AND TIME DIVISION MULTIPLEXING," Electronics and Communication Engineering Journal, IEEE London, GB, vol. 4 no. 4, 01 August 1992.

(q)  Digital Audio-Visual Council's DAVIC 1.4 Specification

(r)  ISO/IEC 13818 Annex H Switched Digital Broadcast Service

(s)  All facts RELATING TO BIGBAND's advertising, marketing, and promotion of BIGBAND's products to third parties.

### Damages

33. The harm (monetary or otherwise) that YOU claim YOU have suffered as a result of IMAGINE's alleged infringement of the PATENTS IN SUIT.

34. The factual basis for any claim for damages, including but not limited to lost profits, reasonable royalty, or price erosion, that YOU intend to make for IMAGINE's alleged infringement.

35. All facts RELATING TO YOUR advertising, marketing, and promotion of YOUR PRODUCTS.

36. YOUR marketing policies, practices, and plans.

37. YOUR pricing policies, practices, and plans.

38. Any competition between IMAGINE and YOU.

39. For each instance in which YOU submitted a proposal or bid for the sale of YOUR PRODUCTS that compete with any ACCUSED PRODUCT, the identity of the customer, the location of the customer, the scope and content of the bid or proposal, the identity of any competing bidders, any evaluation performed by YOU of the competing bids or proposals, the identity of the Person(s) responsible for YOUR bid or proposal, the date that YOU submitted the proposal, and the status of the bid or proposal (including whether YOU were awarded the bid or proposal, and, if not, YOUR understanding of the reason the bid or proposal was awarded elsewhere).

40. The identity, nature, and size of the market in which YOU compete with IMAGINE.

41. The identity of all competitors in any market in which YOU complete with IMAGINE.

42. YOUR business plans.

43. YOUR estimates or beliefs of the relative market share of all competitors in any market in which YOU compete with IMAGINE, and YOUR method for determining that market share.

44. YOUR estimates or projections of the future growth of any market in which YOU compete with IMAGINE.

45. YOUR sales, revenues, costs, profits and loss from the date of commercial introduction of any PRODUCT YOU allege competes with any IMAGINE product.

46. YOUR projected sales, revenues, costs, profits and loss for any PRODUCT YOU allege competes with any IMAGINE product.

47. Any non-infringing alternatives to any ACCUSED PRODUCT.

48. YOUR manufacturing and marketing capacity.

49. Any competitive analysis, pricing strategy, or other market analysis conducted by or relied upon by YOU.

50. Any sale that YOU allege you lost to IMAGINE.

51. The sale of any product or service made in conjunction with or driven by the sale of any of YOUR PRODUCTS on which YOU claim YOU lost profits.

52. Any reduction in price YOU allege resulted from IMAGINE's infringement.

53. Any license or sublicense to which YOU are a party relating to any of YOUR PRODUCTS or any of the PATENTS IN SUIT.

54. YOUR licensing practices and policies.

55. Any established royalty for the PATENTS IN SUIT or any industry royalty rate that YOU believe is relevant to the PATENTS IN SUIT.

56. Any agreements, including without limitation settlements and covenants not to sue, relating to the PATENTS IN SUIT.

57. Any correspondence, communications, and negotiations with third parties relating to the licensing or cross-licensing of the PATENTS IN SUIT.

58. All PERSONS that YOU claim infringe any of the PATENTS IN SUIT.

59. The IDENTIFICATION of persons, employees, and/or third parties involved in or knowledgeable about matters set forth in the topics above.

60. The DOCUMENTS or other information RELATING TO the matters set forth in the topics above, the IDENTITY of the custodian(s) of the document and the location(s) where the document was kept and/or stored in the ordinary course of business.