IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIGBAND NETWORKS, INC., | ) |
| | ) |
|     Plaintiff and Counterclaim Defendant, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-00351 JJF |
| | ) |
| IMAGINE COMMUNICATIONS, INC., | ) |
| | ) **JURY TRIAL DEMANDED** |
|     Defendant and Counterclaim Plaintiff. | ) |
| | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
IMAGINE COMMUNICATIONS' MOTION TO LIMIT CLAIMS**

        MARY B. MATTERER (I.D. No. 2696)
        MORRIS JAMES LLP
        500 Delaware Avenue, Suite 1500
        Wilmington, DE  19801
        Telephone:  302-888-6800
        Email:  mmatterer@morrisjames.com

<u>OF COUNSEL</u>:

JOHN M. BENASSI (Cal. Bar No. 74137)
ALEXANDER BRAINERD (Cal. Bar No. 42722)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA  92122-1246
Telephone:  858-450-8400
Facsimile:  858-450-8499
Email : john.benassi@hellerehrman.com

        Attorneys for Defendant and Counterclaim Plaintiff
        IMAGINE COMMUNICATIONS, INC.

Dated:  May 6, 2008

## TABLE OF CONTENTS

i

## TABLE OF AUTHORITIES

**PAGE**

*Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*,
   No. 04-0038 JJF, 2005 WL 2304190 (D. Del., Sept. 20, 2005) ..............................1, 6, 7

*Ferdik v. Bonzelet*,
   963 F.2d 1258 (9th Cir. 1992)...................................................................................8

*Kearns v. General Motors Corporation*,
   No. 2:85-cv-70461 (E.D. Mich.),
   aff'd, No. 93-1535, 1994 WL 386857 (Fed. Cir. July 26, 1994)...................................8

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ..................................................................................................8

*ReRoof America, Inc. v. United Structures of America, Inc.*,
   C.A. No. 96-cv-388 (N.D. Okla.),
   aff'd, No. 98-1378, 1999 WL 674517 (Fed. Cir. Aug. 30, 1999)..................................8

I. **INTRODUCTION**

In June, 2007 BigBand Networks, Inc. ("BigBand") sued Imagine Communications, Inc. ("Imagine") for infringement of three BigBand patents containing a total of 524 claims. Nearly a year after filing, BigBand has not only failed to provide contentions showing how each element of each claim is infringed, it has refused even to agree to a schedule for reducing the total number of claims it will assert against Imagine. In short, BigBand takes the position that every single one of its hundreds of claims should remain in this case for the indefinite future.

BigBand's intransigence places an unreasonable burden on both the Court and Imagine. With discovery, expert report, and dispositive motion deadlines looming just a few months away, the time for BigBand to settle on a limited number of claims for resolution is now. BigBand's apparent position, however, is that, even though Imagine provided a core production of technical documents months ago, BigBand must be indulged in complete and exhaustive fact discovery before it chooses which of its hundreds of claims to assert. As this Court has already ruled in a previous case, it is not so. *See Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, No. 04-0038 JJF, 2005 WL 2304190, at *3 (D. Del., Sept. 20, 2005) (ordering plaintiff in patent infringement case to reduce number of asserted claims from 90 to ten). This Court can and should impose order on this case by requiring BigBand to reduce its list of asserted claims now—before the close of fact discovery—so that the remainder of this litigation can proceed in an efficient, reasonable, and fair manner. To that end, Imagine requests that the Court order BigBand to choose, within two weeks, a final list of ten total claims from any combination of its patents-in-suit to assert against Imagine.

II. **FACTUAL BACKGROUND**

Imagine is an innovative early-stage technology company developing a platform to allow broadband operators to improve bandwidth, enhance video quality, and provide customized offerings such as targeted ads and personalized audio. BigBand is a publicly-

1

traded company that boasts "six of the ten largest service providers in the U.S." as customers for its video networking platforms.[1]

Imagine has contended from the beginning that BigBand did not have a proper basis for filing this suit. First, at the time the suit was filed, Imagine had no product on the market, meaning that BigBand was arguably just guessing as to what might infringe. Second, the timing is suggestive that litigation and threats thereof were used as a tool to stifle Imagine's financing. In its relatively young life as a company, Imagine has conducted two rounds of venture capital financing, and has twice been threatened with legal action by BigBand. In early 2006, in the middle of Imagine's Series A financing, BigBand brought meritless allegations of trade secret theft, arguing that because Imagine was formed by ex-BigBand employees who had left years earlier, Imagine must have been misusing BigBand's confidential information and trade secrets. Those claims were eventually withdrawn and settled by way of a "Release and Standstill Agreement" dated March 5, 2006, which extinguished all prior possible claims and causes of action except for assertion of patent rights by either party.[2] Then, in June 2007, in the middle of Imagine's second round of financing, BigBand filed this lawsuit, even though there was no product being sold upon which Imagine could perform a Rule 11 infringement analysis. Even more telling is the fact that BigBand refused offers by Imagine both before and after the suit was filed for BigBand to visit Imagine's facilities to receive a presentation on how Imagine's technology worked and on why Imagine believed it did not infringe any of BigBand's patents.[3]

After the suit was underway, in order to try to understand both the scope and factual basis for BigBand's allegations, Imagine served the customary contention

---

[1] *See* http://www.bigbandnet.com/index.php/aboutus.html, visited October 23, 2007.
[2] *See* BigBand Networks, Inc.'s Reply to Imagine Communications, Inc.'s Counterclaims at 13 ("BigBand admits there was a prior dispute between the parties that was resolved by a "Release and Standstill Agreement" dated March 5, 2006").
[3] *See* Declaration of Mary Matterer in Support of Imagine's Motion to Limit Claims ("Matterer Decl."), Ex. 1 (Letter from Jamie Howard to Amir Bassan-Eskenazi dated June 13, 2007).

2

interrogatories. Interrogatory 1 requested a detailed claim chart, setting forth BigBand's infringement contentions with specific reference to documents. BigBand responded by listing as infringed every single claim of its three asserted patents—a total of 524 functional claims in all.[4] But with respect to its contentions regarding *how* those claims are infringed, BigBand's response to this interrogatory was, at best, 'thin on substance.' Consistent with the fact that BigBand had to guess because there was no actual product to target, BigBand's charts cite a sum total of *four* documents—one of which was published *after* BigBand sued and another of which does not mention any Imagine products—to support the entirety of its infringement allegations on the key limitations identified by Imagine. Moreover, for a majority of its apparently-asserted claims, BigBand essentially admits that it did not have evidence to support infringement at the time it filed suit. For these 307 of its 524 claims, BigBand does not even attempt to contend that all of the required elements are infringed. Instead, it temporizes that, for one or more elements of the claim, "[i]t is not clear from the sources available to BigBand at this time" how Imagine infringes the patent.[5]

Whether or not BigBand had a reasonable basis for alleging infringement based on what it knew or could have known at the time the suit was filed (Imagine contends not), for at least the last five months BigBand has had the opportunity to make an informed evaluation of the infringement of its universe of claims. By December of last year, Imagine had produced 20,305 pages of documents to BigBand, including design

---

[4] BigBand's patents-in-suit include a total of 398 written claims. Many of these, however, are in "multiple dependent" form, meaning that each numbered multiple dependent claim adds a limitation to more than one independent claim. *See* 35 U.S.C. § 112. The effect is that each multiple dependent claim creates more than one functional claim for purposes of infringement and invalidity analysis. When these multiple dependent claims are counted, the total number of functional claims in BigBand's patents-in-suit is 524.

[5] To show its displeasure with these inadequate interrogatory responses, Imagine even sent BigBand's attorneys a draft Rule 11 motion showing how the deficient nature of its responses was further evidence of an insufficient pre-filing investigation. *See* Matterer Decl., Ex. 2 (Letter from John Benassi to Jack Blumenfeld dated January 11, 2008 and enclosing draft motion).

specification documents and PowerPoint presentations regarding Imagine's technology. Despite having had the core of Imagine's technical document production for months, BigBand has neither amended its infringement contentions to allege infringement of every element of its claims nor has it withdrawn any of its claims. As things stand, BigBand is apparently continuing to allege that Imagine is infringing—in the majority of cases without saying *how*—all 524 of the claims in the patents-in-suit.

BigBand has rebuffed Imagine's efforts to understand which claims BigBand *really* intends to assert in this litigation. Despite repeated requests, BigBand has refused even to agree to a timetable or a clear procedure for winnowing down its list of asserted claims to a manageable level. At one point, Imagine offered to provide BigBand with complete invalidity contentions for *all* of the Imagine independent claims *before* BigBand narrowed its list (and before BigBand provided proper infringement contentions) so long as BigBand would agree to a definite schedule for narrowing its claims thereafter. BigBand declined, essentially arguing that it has no immediate obligation to move this case along, either by providing adequate infringement contentions or narrowing its claims. Instead, BigBand appears to be playing for time. In recent meet-and-confer discussions and correspondence, BigBand has taken the position that, despite the voluminous production of Imagine technical documents already in its hands, BigBand will not even consider limiting its asserted claims until it has had exhaustive discovery of Imagine, including open-ended document discovery, and/or deposition testimony.[6] Given the impending case deadlines, including expert reports and summary judgment motions, Imagine is compelled to seek the assistance of the Court to narrow the universe of asserted claims in this matter to a manageable number.

---

[6] *See* Matterer Decl., Ex. 3 (Letter from Sara Graves to John Benassi dated April 24, 2008).

III. **ARGUMENT**

    A. <u>**This Case Cannot Be Managed Or Tried Unless BigBand Is Limited In The Number Of Claims It Pursues.**</u>

It is self-evident that neither the parties nor this Court can reasonably hope to try all of BigBand's 524 claims. Even if this case had a limitless schedule, the claim construction, expert reporting and discovery, dispositive motion practice and trial of so many claims would be a mammoth undertaking. And, of course, this case does not have a limitless schedule. In fact, there are a number of looming deadlines that make it imperative for the Court and the parties to have a reduced list of claims to work with as soon as possible. Among these are the due date for expert reports on August 22, 2008, by which time Imagine and its experts will have to prepare a report and claim charts detailing Imagine's invalidity arguments with respect to all of the claims-in-issue. As it stands now, that would require an in-depth analysis of 524 claims. The Court has undoubtedly experienced multi-hundred page expert reports when only a few claims were asserted. The sheer volume of paper required for a 524-claim expert report (not to mention the cost) would be overwhelming.

Moreover, the deadline for dispositive motions is also coming quickly; summary judgment motions—with which Imagine is likely to challenge the validity and alleged infringement of all of BigBand's asserted claims—are due in early November. Without a reasonable limitation on the number of claims, Imagine simply will not be able to prepare an effective defense.

The prejudice to Imagine is made more acute by BigBand's failure thus far to provide meaningful infringement contentions for any of its claims. As discussed above, though BigBand has now had the core of Imagine's technical documents for months, its infringement contentions still cite just four, non-technical documents, most of which do not even mention the accused products. Worse, for the majority of BigBand's 524 functional claims, BigBand has not even *attempted* to say how every element of the claim

5

is infringed.[7] Further, BigBand's refusal to go on the record with the alleged facts of its case is not limited to its interrogatory responses. In another example of its efforts to stall discovery and avoid taking a position, when Imagine noticed a 30(b)(6) deposition to learn the facts underlying BigBand's allegations, BigBand engaged in a six-month meet-and-confer marathon, demanding that Imagine revise and narrow its notice twice and ultimately refused to make any witness available for any category[8] and moved for a protective order.

The net effect of all of this is that Imagine is essentially starting from scratch on its non-infringement case with (by the time this motion is to be heard) less than two months to go before fact discovery cut-off and just under three months before the first round of expert reports are due. An order requiring BigBand to limit its asserted claims to a reasonable number within a reasonable time is required for the parties and the Court to arrive at a timely and fair resolution of this case.

### B. The Court Has The Authority To Require BigBand To Limit The Number Of Its Asserted Claims Now.

Courts faced with the problem of dealing with large numbers of claims in a short period of time have routinely put limitations on the total number of claims a plaintiff may assert. Indeed, in a previous case this Court itself has made an order very similar to the one Imagine seeks here. *See Fenster*, 2005 WL 2304190, at *3. In *Fenster*, the plaintiff had asserted 90 claims, which the defendant contended was an unworkable number. The Court agreed that 90 asserted claims was "unreasonable" and ruled that the plaintiff would be limited to ten claims, finding that that number was "appropriate from the viewpoint of the typical patent litigation." *Id.* Here, of course, the numbers are even more stark: BigBand apparently intends to assert 524 claims against Imagine. By its

---

[7] *See, e.g.*, Matterer Decl., Ex. 4 (excerpts of BigBand's Response to Imagine's First Set of Interrogatories).
[8] Even categories almost identical to the categories of BigBand's own 30(b)(6) notice were met with a refusal to provide a witness.

sheer size alone, that number is more unreasonable than the barrage of claims this Court rejected in *Fenster*.

As important, the Court found in *Fenster* that an order limiting the number of asserted claims is appropriately made well before the end of discovery. Resisting the defendant's motion for limitation, the plaintiff in *Fenster* argued that limitation of the asserted claims at the time was improper because it would "likely limit them after full discovery" and because it had not yet taken a 30(b)(6) deposition of the defendant. *Id.* The Court correctly rejected that argument in *Fenster*, ruling that a plaintiff is not automatically entitled to engage in bottomless discovery before committing to a limited set of asserted claims.

The reasoning applies with equal force here. Imagine has provided BigBand with a small mountain of documents concerning Imagine's products. But rather than revising its existing contentions to allege infringement of every claim it purports to assert, or, alternatively, agreeing to limit its claims, BigBand has taken the position that it cannot consider limiting its claims until it has taken *more* discovery.[9] BigBand's unspecified quantity of additional discovery it claims to need may include the production of Imagine testing documents, feature matricies, customer trial-related documents, user manuals, source code, and/or deposition testimony, even with regard to products that do not exist, confirming that it is still guessing—tilting at windmills hoping to find an infringing product.[10] Maybe this is why BigBand is unwilling to take a position on a limited number of claims: it cannot believe there are no infringing products. But BigBand must have had some basis for bringing this suit in the first place. It must have had reason to believe that at least some *particular* claims of its patents were infringed, by real (not imagined) products. And now that it has had months to analyze Imagine technical documents, it surely must be able to come up with a circumscribed list of those claims it

---

[9] *See* Matterer Decl., Ex. 3 at 2-3.
[10] *See Id.*

7

truly thinks are infringed.[11]  Instead, BigBand wants to keep all of its nearly 524 claims in play as long as possible, regardless of the unfairness to Imagine or the inconvenience to the Court.  It should not be permitted to do so.

Further support for the pragmatic approach of requiring plaintiff to commit to a reasonably-limited number of asserted claims can be found in decisions from other district courts.  In *ReRoof America, Inc. v. United Structures of America, Inc.*, C.A. No. 96-cv-388 (N.D. Okla.), *aff'd*, No. 98-1378, 1999 WL 674517 (Fed. Cir. Aug. 30, 1999), for example, the plaintiff was required to reduce the number of asserted claims to just one claim from each of five asserted patents.  The court rejected the plaintiff's subsequent claims of prejudice when, after losing on the five claims, the plaintiff was denied a second trial on the remaining thirteen.  That ruling was affirmed by the Federal Circuit. *Id*.  Likewise, the district court for the Eastern District of Michigan instructed a plaintiff to limit his asserted claims to exceed no more than one representative claim per patent-in-suit (and ultimately dismissed the case when he refused).  It too was affirmed on appeal. *See Kearns v. General Motors Corporation*, No. 2:85-cv-70461 (E.D. Mich.), *aff'd*, No. 93-1535, 1994 WL 386857 (Fed. Cir. July 26, 1994).

These examples illustrate the broad powers a district court has to manage its docket.  A district court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992).  Moreover, Rule 16 of the Federal Rules of Civil Procedure recognizes the Court's power to impose discovery limitations, adopt special procedures for complex issues and multiple parties, order early presentation of evidence and employ other means to "facilitate the just, speedy, and inexpensive disposition of the action."

---

[11] Logic and litigation experience tell us that BigBand may well have such a list in hand internally already.

Imagine asks that the Court apply these sound principles to this case to compel BigBand to reduce the number of claims asserted against Imagine to a reasonable number—a total of ten claims—that is manageable by both the parties and the Court.

## IV. CONCLUSION

For the reasons stated above, Imagine respectfully requests that the Court order BigBand to serve on Imagine, within two weeks of the Court's order, a final list of no more than ten total claims from any combination of the three patents-in-suit to be asserted against Imagine.

Dated: May 6, 2008

*/s/ Mary Matterer*
MARY B. MATTERER (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 302-888-6800
Email: mmatterer@morrisjames.com

OF COUNSEL:

JOHN M. BENASSI (Cal. Bar No. 74137)
ALEXANDER BRAINERD (Cal. Bar No. 42722)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92122-1246
Telephone: 858-450-8400
Facsimile: 858-450-8499
Email : john.benassi@hellerehrman.com

Attorneys for Defendant and Counterclaim Plaintiff
IMAGINE COMMUNICATIONS, INC.

9