IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BIGBAND NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  07-351 (JJF) |
| | ) | |
| IMAGINE COMMUNICATIONS, INC., | ) | **REDACTED -** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

**DECLARATION OF KAREN JACOBS LOUDEN IN OPPOSITIOIN TO
IMAGINE COMMUNICATIONS' MOTION TO LIMIT CLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
    Attorneys for Plaintiff BigBand Networks, Inc.

OF COUNSEL:

Peter P. Chen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

James L. Day
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

May 23, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BIGBAND NETWORKS, INC.,               )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )        C.A. No. 07-351 (JJF)
                                      )
IMAGINE COMMUNICATIONS, INC.,         )        **REDACTED –**
                                      )        **PUBLIC VERSION**
                    Defendant.        )

**DECLARATION OF KAREN JACOBS LOUDEN IN OPPOSITION TO
IMAGINE COMMUNICATIONS' MOTION TO LIMIT CLAIMS**

I, Karen Jacobs Louden, hereby declare as follows:

1.      I am a partner with the law firm of Morris, Nichols, Arsht & Tunnell LLP.  I am one of the attorneys representing BigBand Networks, Inc. ("Big Band") in this litigation.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a May 15, 2008 letter from J. Benassi to J. Blumenfeld and S. Graves.

3.      Attached hereto as Exhibit 2 is a true and correct copy of BigBand Networks, Inc.'s Response to Imagine Communications, Inc.'s First Set of Interrogatories, dated October 24, 2007.

4.      Attached hereto as Exhibit 3 is a true and correct copy of Imagine Communications, Inc.'s Objections and Responses to BigBand Networks, Inc's First Set of Interrogatories, dated October 24, 2007.

5.      Attached hereto as Exhibit 4 is a true and correct copy of an April 24, 2008 letter from S. Graves to J. Benassi.

6.      Attached hereto as Exhibit 5 is a true and correct copy of a May 12, 2008 letter from J. Benassi to S. Graves.

7.     Attached hereto as Exhibit 6 is a true and correct copy of a May 15, 2008 letter from J. Benassi to J. Blumenfeld and S. Graves.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on this 23rd day of May, 2008.

Karen Jacobs Louden (#2881)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 23, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Mary B. Matterer
MORRIS JAMES LLP

I also certify that copies were caused to be served on May 23, 2008 upon the following in the manner indicated:

**BY HAND AND E-MAIL**

Mary B. Matterer
Morris James LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE  19801

**BY E-MAIL**

John Benassi
Alexander Brainerd
Heller Ehrman LLP
4350 La Jolla Village Drive
Suite 700
San Diego, CA 92122

*/s/ Karen Jacobs Louden*
Karen Jacobs Louden

# EXHIBIT 1

# HellerEhrman LLP

May 15, 2008

John M. Benassi
John.Benassi@hellerehrman.com
Direct 858.450.5843
Direct Fax 858.587.5918
Main +1 (858) 450-8400
Fax +1 (858) 450-8499

42791.0003

*Via Email Transmission and U.S. Mail*

Jack Blumenfeld, Esq.
Morris, Nichols, Arsht & Tunnell
1201 North market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Sara Petersen Graves, Esq.
Latham & Watkins LLP
140 Scott Drive
Menlo Park, California 94025

> **Re:** ***BigBand Network, Inc. v. Imagine Communications, Inc.***
> **Case No. 07-351 (JJF) (D. Del.)**

Dear Counsel:

We propose negotiating a schedule that will do away with all motions currently pending before the Court as follows:

**MAY 15 – Ongoing**

(a)     Imagine continues to search, process, and produce documents. We have already produced the bulk of Imagine's technical documents and will be producing a few more in a week or so. We have also collected a substantial volume of email from key custodians, and we are currently searching those emails based on the following terms.

| | | |
|---|---|---|
| BigBand* | "Big Band" | litigation* |
| BBND* | patent* | "session manager" |
| BBN* | lawsuit* | "modification priority" |
| | | "product requirements document" |

If BigBand would like to propose any additional search terms, we are open to discussion on this issue. We intend to produce additional documents that may be called for up to a particular negotiated cut-off date on a rolling basis.

---

Heller Ehrman LLP    4350 La Jolla Village Drive, 7th Floor    San Diego, CA  92122-1246    www.hellerehrman.com

Beijing  Hong Kong  London  Los Angeles  Madison, WI  New York  San Diego  San Francisco  Seattle/Anchorage  Shanghai  Silicon Valley  Singapore  Washington, D.C.

HellerEhrman LLP

Jack Blumenfeld, Esq.
Sara Petersen Graves, Esq.
May 15, 2008
Page 2

(b)     Big Band will also provide similar search criteria to Imagine and produce all additional BigBand emails and responsive documents as per the above procedure.

MAY 16 – Claim term exchange (limited to independent claims).

MAY 20 – Imagine produces invalidity claim charts on all independent claims.

MAY 28 – Parties agree on at least three independent IP mediator candidates.

JUNE 10 – BigBand reduces its list of asserted claims to 10.

JUNE 20 – Imagine produces source code using a third party escrow procedure set forth in Exhibit A.

JUNE 25 – BigBand produces complete infringement charts on 10 claims it has identified.

JUNE 26 – Court-ordered mediation.

JUNE 30 – Imagine's Rule 30(b)(6) deposition is commenced with Imagine going first by two weeks (limited to categories ordered by Judge Farnan or agreed to by the parties).

JULY 1 – Imagine produces non-infringement charts on the 10 identified claims.

JULY-SEPTEMBER – Individuals and third-party witnesses are deposed.

OCTOBER 1 – New fact discovery cut-off date.

OCTOBER 20 – Opening expert reports.

NOVEMBER 10 – Rebuttal expert reports.

NOVEMBER 28 – Expert discovery to be completed.

We look forward to your prompt response.

Sincerely,

John M. Benassi
HELLER EHRMAN LLP

cc:     Mary Matterer, Esq.

HellerEhrman LLP

Jack Blumenfeld, Esq.
Sara Petersen Graves, Esq.
May 15, 2008
Page 3

## Exhibit A

## Source Code Protocol

The parties have agreed on the following protocol for the inspection of source code, which refers to human-readable text files used as input to computer programs that generate machine-readable files. Source code includes, but is not limited to, files containing program text in "C", "C++", assembler, VHDL, Verilog, and digital signal processor (DSP) programming language. Source code further includes "make" files, link files, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, microcontroller, or DSP. Source code does not include binary executable files and object code files.

(a)     The Disclosing Party will provide pre-Bates stamped and pre-confidentiality designated stamped (but otherwise blank) printing paper. Source code may only be printed on such paper on a designated printer at a secure facility(ies) designated by the Disclosing Party.

(b)     Only those persons identified in paragraphs 3(a), (b) and (g) may have access to the secure facility(ies) for inspection of the Disclosing Party's source code. The Receiving Party's counsel shall provide to outside counsel for the Disclosing Party the names of any individual who will require access to the secure facility at least three business days before such access will be granted the first time. Individuals who have been previously identified according to this paragraph may access the secure facility, consistent with the normal practice at the facility, without further approval, although the Disclosing Party shall be informed each time such person accesses the secured facility.

(c)     If the individual(s) inspecting the Disclosing Party's source code desire to take notes, all such notes will be taken on bound (spiral or other type of permanently bound) notebooks. No loose paper or other paper that can be used in a printer may be brought into the secure facility.

(d)     Outside counsel for BigBand and Imagine will make arrangements with the designated facility(ies) for the computer and the printer. The Receiving Party may request that specific standard software analysis tools used by the Disclosing Party be available on the Disclosing Party's computer, which request shall not be unreasonably denied. To the extent that these standard software analysis tools generate output files, such files shall be used only for the purpose so this litigation and shall be subject to the provisions of the Protective Order or file in this case. Any such output files shall be designated "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION," and treated accordingly. The Disclosing party shall not record, monitor, or otherwise attempt to obtain the work product of the Receiving Party during the inspection.

HellerEhrman LLP

Jack Blumenfeld, Esq.
Sara Petersen Graves, Esq.
May 15, 2008
Page 4

(e)    No computer component or peripheral that may be suitable for use with the computer or printer in the room (including hard drives and floppy drives, tape drives, modems, and modem cards, etc.) will be permitted in the secure facility(ies).

(f)    At the end of each working day, all originally printed pages will be retained by Disclosing party representatives who will then make one copy for a designated individual from the Receiving Party. Only such copies of selected source code may be removed form the facility by the individual identified in paragraphs 3(a), (b) and (g). Printing and copying may not be done in such volume as to circumvent the purpose of this provision in protecting the parties' source code to the fullest extent possible.

(g)    No originally printed paper will be permitted to be removed from the facility other than by representatives of the Disclosing Party.

(h)    Inspection personnel will be required to give three business days notice before being granted access to the secure facility during normal working hours for the selected facility. Any person or party who fails to observe the notice requirement may be denied access.

SD 904756 v1

# EXHIBIT 2

REDACTED

# Exhibit 3

REDACTED

# EXHIBIT 4

Sara Petersen Graves
Direct Dial: +1.650.463.2674
sara.graves@lw.com

140 Scott Drive
Menlo Park, California 94025
Tel: +650.328.4600  Fax: +650.463.2600
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

### VIA EMAIL

April 24, 2008

John M. Benassi
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA  92122-1246

Re:    BigBand Networks, Inc. v. Imagine Communications, Inc.
       C.A. No. 07-351 (JJF) (D. Del.)

Dear John:

I write to follow up on our discussion yesterday regarding various discovery matters.

Imagine's Amended 30(b)(6) Deposition Notice to BigBand:

We reiterated that BigBand still has fundamental conceptual concerns regarding Imagine's amended 30(b)(6) deposition notice.  For example, we continue to believe that Topics Nos. 1-4, which seek BigBand's contentions, are improper.  We also have concerns about the over breadth of many of the topics and the unfairness of having any individual witness provide exhaustive information about matters more appropriately sought by written discovery.  We asked if you would take another look at Imagine's notice and consider amending it further.  We further indicated that if Imagine chooses to stand on its notice, we would have no option but to seek relief from the Court.  You agreed to review BigBand's objections to Imagine's notice and to provide another amended notice by Friday, April 25, 2008.

BigBand's 30(b)(6) Deposition Notice to Imagine:

You asked whether BigBand would be willing to amend its 30(b)(6) notice to address Imagine's objections.  We explained that Peter Gratzinger had advised us that Imagine's objections were in the nature of a reservation of rights and that Imagine has never articulated any specific concerns about BigBand's notice, which is of a much narrower scope than Imagine's notice.  You agreed to identify any specific concerns Imagine would like addressed in writing by Friday, April 25, 2008 or Monday, April 28, 2008.

John M. Benassi
April 24, 2008
Page 2

LATHAM&WATKINSᴸᴸᴾ

Imagine's Responses to BigBand's Written Discovery:

*Interrogatories Nos. 4-6 and Document Requests Nos. 22-24:*

We again asked whether Imagine will produce a chart identifying support for its invalidity contentions (in response to BigBand's Interrogatories Nos. 4-6). You stated that Imagine would be willing to produce a chart comparing the independent claims at issue to prior art within the next one to three weeks. If this is incorrect, or if you believe that Imagine's obligation to provide this chart is conditioned on any obligation of BigBand's, please inform me no later than April 30, 2008.

You asked, during the call, whether BigBand will agree to reduce the number of claims at issue within a certain amount of time after receiving Imagine's invalidity chart. We explained that for BigBand to reduce the number of claims, it requires not only Imagine's invalidity chart, but also further discovery about Imagine's products - namely, design and engineering documents (in response to Document Requests Nos. 22-24). You indicated your belief that Imagine has produced some design and engineering documents and that, as a start-up company, Imagine may not have the documentation of more established companies. We agreed to provide a description of the design-related documents BigBand has received from Imagine to date and a description of the types of documents that BigBand still requires. To be clear, however, BigBand does not agree that any reduction in the asserted claims is tied to Imagine's obligation to provide adequate invalidity charts.

Documents Produced:

BigBand has received the following types of documents from Imagine. We would appreciate receiving confirmation that the versions produced are current:

- Presentations that appear to be directed to investors/ customers – some such presentations include a few technical slides describing Imagine's technology at a high level;

- Presentations that appear to be for internal purposes – these presentations include slides regarding the architecture Imagine uses; and

- Design documents that appear to be for internal purposes and describe various parts of Imagine's products, including QOD Gateway, Timeslot Population Algorithm, QOD Processor, Enhanced Video Decoder, Quality Manager, TS Packetizer, Variable Length Encoder, and QOD Gateway - SDV 1.0.

Documents Needed:

BigBand seeks the following documents from Imagine:

- Any additional design/ development documentation relating to Imagine's SDV Solution;

- Documents regarding the design/development of the entirety of the products at issue;

LATHAM&WATKINS LLP

- Any testing documents, including without limitation documents relating to the set-up, testing procedure, features tested, results, and personnel involved, including customer or other third party documents in Imagine's possession;

- Any feature matrices tracking progress of implementation, testing, trials, and deployment of Imagine products;

- Any documentation relating to customer trials, including without limitation both those used by Imagine engineers to assist in set up or deployment and documents provided to or by customers describing, explaining, or providing specifications of the trial; and

- Any customer or user manuals describing the features of Imagine's products.

- Any source code implementing features of Imagine's products.

Please advise us whether and when Imagine will produce the documents described above, or if Imagine does not possess such documents. In that event, as we indicated during our discussion, BigBand may be required to take deposition discovery to pursue these design and engineering-related discovery topics before it will be in a position to reduce the number of claims at issue, particularly if, as you suggest, technical documents describing the design and operation of the accused products do not exist. If Imagine is willing to produce the categories of documents identified above, we can be reasonably flexible about the timing of the production. We need a prompt response, however, to the threshold questions of whether Imagine has and is willing to produce these categories of documents. Please respond by April 30 with regard to each category. If there is going to be a dispute as to any of these categories, we wish to address it without further delay

*Interrogatories Nos. 10-11*:

We also asked whether – in support of its non-infringement contentions – Imagine will identify other claim elements that it alleges are missing from the accused products. To date, Imagine simply has provided a chart setting forth its contentions "as to at least one limitation that is not met by [the accused] products." You stated that Imagine may not provide non-infringement contentions for all of the current claims, and we reiterated that BigBand had provided its infringement contentions and Imagine should identify all claim elements it alleges are missing from the accused products. Please let us know Imagine's final position as to whether it will identify all elements on which it bases its non-infringement contentions by no later than April 30, 2008.

LATHAM&WATKINS LLP

     Please advise me immediately if this letter does not accurately reflect Imagine's position on these matters.

          Truly Yours,

          /s/  Sara Petersen Graves

          Sara Petersen Graves
          of LATHAM & WATKINS LLP

cc:    Christopher Longman
       Mary Matterer

# EXHIBIT 5

# HellerEhrman LLP

May 12, 2008

John M. Benassi
John.Benassi@hellerehrman.com
Direct 858.450.5843
Direct Fax 858.587.5918
Main +1 (858) 450-8400
Fax +1 (858) 450-8499

42791.0003

*Via Email Transmission and U.S. Mail*

Sara Petersen Graves
Latham & Watkins LLP
140 Scott Drive
Menlo Park, California  94025

**Re:**  *BigBand Network, Inc. v. Imagine Communications, Inc.*
**Case No. 07-351 (JJF) (D. Del.)**

Dear Ms. Graves:

We are writing this letter in response to your earlier meet and confer letters and specifically your April 24, 2008 letter and subsequent motion to compel. We believe the motion was premature. It was filed before the meet and confer process was completed, and with all due respect, should be withdrawn so that a more orderly schedule for proceeding with this case can be entered into.

As discussed in various meet and confer sessions previously, your written discovery is directed to many products that are nonexistent. Had you completed the meet and confer process as contemplated by the federal and local rules you would have realized this. Likewise, if you or your client had availed itself of the opportunity to visit our premises and see exactly what technology we were working on prior to and subsequent to the filing of the action.

So it is pretty clear you have been guessing at what products we are actually producing, and your motion reflects that. This is particularly true with your motion to compel documents relating to Imagine's alleged Switched Digital Video Products. While Imagine has conducted research and development toward a prototype SDV staging processor, this is a recently-completed effort and is not a commercially available product. So not only is that product not on the market, but it does not use the technology claimed in BigBand's patents. It was also not called for by your written discovery. Additionally, while Imagine is currently investigating market demand for a QOD gateway capable of VBR Stat-muxing when interacting with a SDV staging processor that employs Imagine's technology, this is also not a commercial product. Again, Imagine is not currently developing that gateway and is only

Heller Ehrman LLP   4350 La Jolla Village Drive, 7th Floor   San Diego, CA  92122-1246   www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Shanghai   Silicon Valley   Singapore   Washington, D.C.

# HellerEhrman LLP

evaluating the viability of doing so.  These efforts were also not called for in your written discovery.

Indeed, it may come as a surprise to you, Imagine's only commercial product is the Imagine ICE Broadcast System employing Imagine's ICE and ICE-Q technology and that was not commercially available at the time you filed suit.

So, you are currently moving to compel documents that do not exist related to commercial products that do not exist.

Finally, legitimate meet and confer discussions did not really start until mid-April of this year, following months of hiatus where both sides stopped work on this case because settlement discussions were taking place in earnest.  Even when the parties started revisiting and renegotiating discovery issues in mid-April, these efforts have been hampered further by the fact that both Peter Gratzinger left the firm and John Minton was no longer on the case.

So I recommend you withdraw the motion and continue our meet and confer process lest we waste valuable time with briefing and attending the hearing where we argue about issues that are non-existent.

We also recommend discussing a new discovery schedule to reflect the time we spent negotiating settlement rather than litigating since it is pretty clear we are not going to meet the August discovery cut-off date.

Please call us at your convenience to discuss how to resolve these issues.

Sincerely,

John M. Benassi
HELLER EHRMAN LLP

cc:    Jack Blumenfeld, Esq.
       Mary Matterer, Esq.

SD 904516 v1

# EXHIBIT 6

# HellerEhrman LLP

May 15, 2008

John M. Benassi
John.Benassi@hellerehrman.com
Direct 858.450.5843
Direct Fax 858.587.5918
Main +1 (858) 450-8400
Fax +1 (858) 450-8499

42791.0003

*Via Email Transmission and U.S. Mail*

Jack Blumenfeld, Esq.
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington DE 19899-1347

Sara Petersen Graves
Latham & Watkins LLP
140 Scott Drive
Menlo Park, California 94025

Re:    *BigBand Network, Inc. v. Imagine Communications, Inc.*
       **Case No. 07-351 (JJF) (D. Del.)**

Dear Counsel:

Following up on yesterday's phone call with Jack Blumenfeld, at which time we discussed the upcoming trade show, we enclose some materials which will be used at the show. We also address an issue which we believe has caused considerable confusion between the parties.

We believe it is important that you understand the difference between having a commercially available product, demonstrating a proof of concept model at a trade show to get potential customer feedback on the viability of developing the SDV gateway, and/or advance marketing of a product on Imagine's roadmap that we intend to release in the near future. To be clear, at the upcoming trade shows (NCTA next week; SCTE in June) Imagine will demonstrating three products of which only one is commercially available: (1) the Imagine ICE Broadcast System which is currently commercially available; (2) The ICE Gateway for VOD which is in development but won't be commercially available until 2009; and (3) Imagine staging processor for SDV which is Imagine's pre-processor for a SDV network and which is based on the same code and platform as the ICE Broadcast System. We are doing advanced marketing of this product as we intend to make it commercially available in Q3 2008.

Heller Ehrman LLP   4350 La Jolla Village Drive, 7th Floor   San Diego, CA  92122-1246   www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Shanghai   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman LLP

Jack Blumenfeld, Esq.
Sara Petersen Graves, Esq.
May 15, 2008
Page 2

Imagine's marketing materials do mention that the same ICE Gateway we are developing for VOD can be used for implementing VBR multiplexing in an SDV architecture and we show network diagrams depicting this deployment scenario, on Imagine's web-site as well so this should not be surprising to anyone. But in order to enable the ICE Gateway to work in an SDV network we will still need considerable development work, which is not currently underway. So far Imagine has not received enough positive feedback, nor has it seen any demand for this product. Imagine does have a high level architecture and an SRS for the SDV Gateway (we have already produced up-to-date copies of these documents) which Imagine uses as part of Imagine's evaluation and planning process. If future customer inputs are supportive of developing and productizing the ICE Gateway for SDV for commercial deployment Imagine may do so in the future. But, please understand that this product is not currently commercially available, nor is it being developed at this time. So your client may see an ICE Gateway in Imagine's booth simulating the VOD application, but they will not see an operational SDV Gateway. The only SDV related product they will see is Imagine's pre-processor which Imagine calls its Core Staging Processor ("CSP") which is an extension of the ICE Broadcast System.

So, it appears that at least a portion of BigBand's motion to compel is based on a basic misconception of Imagine's commercial products, and seeks an order that Imagine produce extensive documentation on products with are not commercialized (and are at most concept products). As such, this portion of BigBand's motion is misplaced and should be withdrawn.

Yesterday you mentioned the possibility of the parties utilizing an independent IP expert to assist in settlement. I am not sure how far along we are in the process, but we agree with it. There is a basic misconception about Imagine's products which impeded prior settlement discussions.

Please call us at your convenience to discuss how to resolve these issues.

Sincerely,

John M. Benassi
HELLER EHRMAN LLP

Enclosure
cc:   Mary Matterer, Esq.

SD 904704.v1



APPROVED

imagine up to 50% more streams at the best quality

Area 2 (15:1 SD) A — Product Header

APPROVED

imagine SDV and VOD Diagram

- Delivers up to 15:1 SD signals over existing SDV, VOD and digital broadcast systems
- Provides the highest video quality, at any given bit rate

Area 2 (15:1 SD) B — Product Feature Graphic

APPROVED

imagine having it all.
MOST STREAMS, BEST QUALITY, CHOOSE BOTH.




Video Layer QoS
The first platform enabling end-to-end control of video quality

Area 2A — Brand ID or Product ID Graphic

APPROVED

imagine having it all.
MOST STREAMS, BEST QUALITY, CHOOSE BOTH.



Imagine ICE-Q² algorithms
The first accurate, objective video quality measurement subsystem

Area 2A — Brand ID or Product ID Graphic

imagine instantly improving Switched Digital video quality

Area 3 (SDV) A — Product Header

APPROVED

imagine having it all.
MOST STREAMS, BEST QUALITY. CHOOSE BOTH.

Video Layer QoS
The first platform enabling end-to-end control of video quality

Area 3C — Brand ID or Product ID Graphic

APPROVED

imagine having it all.
MOST STREAMS, BEST QUALITY. CHOOSE BOTH.

Imagine ICE-Q® algorithms
The first accurate, objective video quality measurement subsystem

Area 3D — Brand ID or Product ID Graphic

APPROVED

Imagine ICE™ SDV System

• Offers dramatically higher CBR quality than conventional clamping
• Futureproof: Add Imagine ICE Gateway for end-to-end VBR Stat/Mux

Area 3 (SDV) B — Product Feature Graphic

imagine total control of video quality
from the source to the set-top

Area 4 (vision mgmt) — Product Header

## INTRODUCING
### The Imagine ICE™ Video Manager

- Allows you to establish and sustain Video Layer QoS levels across services

- Measures and monitors the video quality of your network

- Provides detailed reports of video quality and service availability

Area 4 (vision mgmt) — Product Feature Graphic