# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BIGBAND NETWORKS, INC.,

       Plaintiff and Counterclaim Defendant,

v.

IMAGINE COMMUNICATIONS, INC.,

       Defendant and Counterclaim Plaintiff.

Civil Action No. 1:07-CV-00351 JJF

**PUBLIC VERSION**

---

## DEFENDANT IMAGINE COMMUNICATIONS, INC.'S
## BRIEF IN OPPOSITION TO BIGBAND'S MOTION FOR PROTECTIVE ORDER

MARY B. MATTERER (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 302-888-6800
Email: mmatterer@morrisjames.com

OF COUNSEL:
JOHN M. BENASSI (Cal. Bar No. 74137)
ALEXANDER BRAINERD (Cal. Bar No. 42722)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92122-1246
Telephone: 858-450-8400
Facsimile: 858-450-8499
Email : john.benassi@hellerehrman.com

Attorneys for Defendant and Counterclaim Plaintiff
Originally filed: May 19, 2008    IMAGINE COMMUNICATIONS, INC.
Public version filed: May 29, 2008

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   FACTUAL BACKGROUND .......................................................... 5

III.  ARGUMENT ................................................................................... 8

     A.    Plaintiff BigBand's objection that Defendant noticed a
          "contention" deposition is weak and should be rejected. ....................10

     B.    Categories in the Amended Notice directly relate to specific
          issues in this case and would yield relevant substantive
          evidence to narrow issues for trial .......................................................14

     C.    The scope of Defendant's deposition notice is proper in view of
          the factors set forth in Fed. R. Civ. P. 26; Plaintiff BigBand's
          boilerplate objections should be rejected ..............................................19

          1.    The "needs of the case" support use of deposition as
               the most efficient discovery vehicle to flesh out any
               supporting facts, to narrow the issues ....................................19

          2.    Where the claimed "amount in controversy" is the
               existence of Defendant Imagine, Plaintiff should not
               be allowed to evade discovery.............................................20

          3.    The "parties' resources" favors Plaintiff; proceeding
               with the deposition would level the field ..............................20

          4.    The "importance of the issues at stake in the
               litigation and the importance of the proposed
               discovery in resolving and narrowing the issues"
               favors allowing the deposition to proceed.............................21

IV.   CONCLUSION ................................................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.,
144 F.R.D. 372 (N.D. Cal. 1992)...................................................................12

Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.,
174 F.R.D. 609 (M.D. Penn. 1997)...............................................................13

Board of Regents v. Nippon Telephone and Telegraph Corp.,
2004 U.S. Dist. LEXIS 28819 (W.D. Tex. 2004)........................................10

Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.,
394 F.3d 1348 (Fed. Cir. 2005) ....................................................................18

Chase Manhattan Mortgage Corp. v. Advanta Corp.,
2003 U.S. Dist. LEXIS 18015 (D. Del. 2003)......................................10, 11

Hagemeyer N. Am., Inc. v. Gateway Data Sci. Corp.,
222 F.R.D. 594 (E.D. Wis. 2004) .................................................................19

Mahurkar v. C. R. Bard, Inc.,
79 F.3d 1572 (Fed. Cir. 1996) ......................................................................16

McKesson Information Solutions, Inc. v. Bridge Medical, Inc.,
487 F.3d 897 (Fed. Cir. 2007) ......................................................................17

Mitsui & Co. v. Puerto Rico Water Res. Auth.,
93 F.R.D. 62 (D.P.R. 1981)...........................................................................12

Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.,
137 F.R.D. 267 (D. Neb. 1989) ..............................................................10, 13

Resolution Trust Corp. v. Sands,
151 F.R.D. 616 (N.D. Tex. 1993)..................................................................10

Security Ins. Co. of Hartford v. Trustmark Ins. Co.,
218 F.R.D. 29 (D. Conn. 2003) .....................................................................10

Smith v. General Mills, Inc.,
2006 U.S. Dist. LEXIS 19093 (S.D. Ohio 2006).................................10, 12

U.S. v. McDonnell Douglas Corp.,
961 F.Supp. 1288 (E.D. Mo. 1997)...............................................................10

United Coal Co. v. Powell Constr. Co.,
839 F.2d 958 (3d Cir. 1988) ..........................................................................13

United States v. Taylor,
166 F.R.D. 356 (M.D.N.C. 1996) aff'd, 166 F.R.D. 367 (M.D.N.C. 1996)................12

Upjohn Co. v. U. S.,
449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) ..............................13

ii

<u>Wyeth v. Impax Labs., Inc.</u>,
    Civil Action No. 06-222-JJF (D. Del. 2007) ............................................................10

**Statutes**

35 U.S.C. § 112 .............................................................................................................. 1

35 U.S.C. § 285 ..............................................................................................................15

**Rules**

37 C.F.R. § 1.56 ..............................................................................................................18

Fed. R. Civ. P. 11 ......................................................................................................1, 2, 15

Fed. R. Civ. P. 26 ...........................................................................................................19

Fed. R. Civ. P. 30(b)(6) ...........................................................................................passim

Fed. R. Civ. P. 33(b) ......................................................................................................12

Fed. R. Evid. 701-704.....................................................................................................12

**Other Authorities**

8A Charles A. Wright, Arthur R. Miller and Richard L. Marcus,
    <u>Federal Practice and Procedure</u> § 2103 (2d ed. 1994) ........................................ 8-9, 12

Lord, The Dalkon Shield Litigation: Revised Annotated Reprimand
    by Chief Judge Miles W. Lord, 1986, 9 Hamline L.Rev. 7,11..................................... 9

## I.    INTRODUCTION

In June, 2007 BigBand Networks, Inc. ("BigBand") sued Imagine Communications, Inc. ("Imagine") for infringement of three BigBand patents containing a total of 524 functional claims.[1]  BigBand's factual basis for filing this lawsuit was questionable, to say the least, because: (a) at the time the lawsuit was filed, Imagine was an early-stage startup with no products on sale and no documentation available to the public that could be the basis of a Fed. R. Civ. P. 11 analysis; and more importantly (b) BigBand refused Imagine's repeated offers both before and after the lawsuit to visit Imagine's facilities to get a demonstration of why Imagine's products did not infringe any BigBand patent.[2]

To try to get to the bottom of the basis of the lawsuit, Imagine first served interrogatories, document requests, and requests for production.  BigBand stonewalled, providing for example, "infringement contentions" in which it admitted, understandably so – that it did not know whether 307 of the 524 asserted claims were infringed.  BigBand also refused to either clearly admit or deny any of Imagine's Requests for Admission or produce any relevant documents supporting its infringement accusations, other than a sales brochure that only vaguely described what the startup hoped to do.

So, six months into the case, and almost six months ago in December 2007, Imagine served a targeted 30(b)(6) deposition notice which is anticipated to last about twelve hours, and during the course of extensive meet and confers, has narrowed that notice twice, but no witnesses

---

[1] BigBand's patents-in-suit include a total of 398 written claims.  Many of these, however, are in "multiple dependent" form, meaning that each numbered multiple dependent claim adds a limitation to more than one independent claim.  *See* 35 U.S.C. § 112.  The effect is that each multiple dependent claim creates more than one functional claim for purposes of infringement and invalidity analysis.  When these multiple dependent claims are counted, the total number of functional claims in BigBand's patents-in-suit is 524.

[2] *See* Declaration of Mary Matterer in Support of Imagine's Motion to Limit Claims ("Matterer Decl."), Exh. A (Letter from Jamie Howard to Amir Bassan-Eskenazi dated June 13, 2007).

have been produced on any topic.[3]  BigBand is a well-funded multi-national company with research facilities in Israel, and having a 30(b)(6) Deposition is the quickest and least expensive way to get at the facts, enable Imagine to gather the evidence it needs, and allow the parties to simplify issues for summary judgment, settlement and/or trial.

In response to Imagine's repeated efforts to get to the heart of the issues in the case, for example, whether BigBand has any factual basis to support its claims of patent infringement, how BigBand's own products functioned, or whether its own products were covered by its own patents to allow BigBand to claim commercial success, BigBand has stonewalled.  This is even though BigBand served its own 30(b)(6) Deposition having many of the same topics.  BigBand's motion for a protective order striking Imagine's Second 30(b)(6) deposition notice is BigBand's latest gambit in this plan, and should be denied.

Fed. R. Civ. P. 11 requires Plaintiff BigBand to have a factual basis to believe that Defendant's products infringed Plaintiff's patent *before* Plaintiff filed suit.  Plaintiff BigBand has only identified 4 documents to support its infringement claims; one of which published *after* Plaintiff filed suit and Plaintiff refused to provide further information in written discovery. Defendant Imagine's attempts to use written discovery to understand  Plaintiff's basis for filing its patent-infringement claims and to uncover evidence supporting possible defenses has, thus far, yielded few (if any) direct answers, despite extensive meet and confer efforts.[4]  Imagine even sent BigBand's counsel a draft Rule 11 Motion to show its displeasure with BigBand's Interrogatory Responses,[5] but BigBand has refused to supplement.

---

[3] The case was dormant for several months (February 22-April 9) while the parties were discussing settlement and because the case was assigned to the "empty chair" still; the parties negotiated extensively to try to resolve the issues.

[4] Matterer Decl. Exh. B.

[5] Matterer Decl. Exh. C.

This lawsuit, filed before BigBand even knew what products Imagine was developing, is apparently being driven not by logic, but by passion to get back at several of its ex-employees who left BigBand, formed Imagine, received funding, and are succeeding. Imagine has conducted two rounds of venture capital financing, and been threatened with legal action by BigBand at each juncture.

In early 2006, in the middle of Imagine's Series A financing, BigBand brought meritless allegations of trade secret theft, arguing that because Imagine was formed by ex-BigBand employees who had left years earlier, Imagine must have been misusing BigBand's confidential information and trade secrets. Those claims were eventually withdrawn and settled by way of a "Release and Standstill Agreement" dated March 5, 2006, which extinguished all prior possible claims and causes of action except for assertion of patent rights by either party.[6]

Then, in June 2007, in the middle of Imagine's second round of financing, BigBand filed this lawsuit, even though there was no product being sold upon which BigBand could perform a Rule 11 infringement analysis, and <u>even though Imagine offered, both before and after the suit was filed, to open its facilities to BigBand and make a presentation showing how Imagine's technology worked and why Imagine did</u> not infringe any of BigBand's patents.[7] Despite this, BigBand filed and then proceeded with the lawsuit anyway. Now it is stalling, to avoid exposing the fundamental weakness of its case, by refusing to produce witnesses, refusing to narrow the number of patent claims to a manageable number and refusing to fully respond to interrogatories.

Only by a 30(b)(6) Deposition can this case be whittled down to manageable proportions. Defendant Imagine's deposition notice lists 4 general categories, comprising 54 targeted topics, to facilitate identification of key witnesses who could unlock the facts (to the extent they exist)

---

[6] *See* BigBand Networks, Inc.'s Reply to Imagine Communications, Inc.'s Counterclaims (DI #11) at 13 ("BigBand admits there was a prior dispute between the parties that was resolved by a "Release and Standstill Agreement" dated March 5, 2006").

[7] *See* Matterer Decl. Exh A.

3

supporting Plaintiff's claims.[8]  Although Plaintiff objects to only some topics on the grounds that they constitute "contention" topics, BigBand refuses, wholesale, to produce *any* witness – on *any* topic, "contention" or otherwise – until the "contention deposition" objections are resolved and discovery has essentially been completed.

While Defendant Imagine recognizes that this District sometimes disfavors premature "contention" depositions and respects the reasons for that disinclination, *this* Fed. R. Civ. P. 30(b)(6) deposition is warranted[9] due to Plaintiff's year long inexcusable stalling and the time and expense it will take to narrow this 524 claim lawsuit by conventional means.  The case has been pending for almost one year and BigBand has had documents describing Imagine's non-infringing system for over <u>six</u> months.  BigBand has five experts on its payroll to go through the documents.  It is time for BigBand to lay out its evidence so that the parties can get to the real disputed issues.

Given BigBand's refusal to provide this information through written discovery as part of an apparent attempt to avoid laying its cards on the table, the most efficient way to learn the alleged facts on which Plaintiff BigBand filed its lawsuit is the noticed deposition, especially given the limited amount of time left before fact discovery closes August 1, 2008.  Simply put, Defendant Imagine seeks a 30(b)(6) deposition as a way to cut through BigBand's smokescreen so it can efficiently and cost-effectively identify and address the real factual disputes in this case.

---

[8] In fact, Defendant Imagine's Fed. R. Civ. P. 30(b)(6) notice is a narrowed version of a deposition notice previously approved by this Court in an unrelated case - <u>Wyeth v. Impax Labs., Inc.</u>, Civil Action No. 06-222-JJF (D. Del. 2007), and the parties in that case were represented by many of the attorneys now before the Court.  The Court's Order approving the Impax 30(b)(6) notice is set out in Matterer Decl., Exh. D.  As with the prior <u>Wyeth v. Impax</u> case, there are clearly many categories which are similar if not identical to those which BigBand itself noticed in its own 30(b)(6) notice, and on which it demands that Imagine produce witnesses.  BigBand cannot characterize as requiring contentions, for example, those topics that ask for the architecture and operation of BigBand's first prototype and current product (topics 13, 20).  BigBand's own notice is attached as Matterer Decl., Exh. E.  Categories 1, 3, 5, and 7 from BigBand's' respective notice asks for basically the same thing.

[9] This is true even if it is construed to be a "contention deposition" – which it is not.

For these reasons, Defendant Imagine respectfully requests that this Court deny BigBand's Motion for a Protective Order and instead order Plaintiff to produce, within 10 days, one or more Fed. R. Civ. P. 30(b)(6) witnesses on all of the noticed topics in Defendant Imagine's Second Amended Notice.

## II.    FACTUAL BACKGROUND

Imagine is an innovative early-stage technology startup company developing a platform to allow broadband operators to improve bandwidth, enhance video quality, and provide customized offerings such as targeted ads and personalized audio. BigBand is a publicly-traded company that boasts "six of the ten largest service providers in the U.S." as customers for its video networking platforms.[10]

After the suit was underway, in order to try to understand both the scope and factual basis for BigBand's allegations, Imagine served the customary contention interrogatories. Interrogatory 1, for example, requested a detailed claim chart, setting forth BigBand's infringement contentions with specific reference to documents. BigBand responded by listing as infringed every single claim of its three asserted patents—a total of 524 functional claims in all.[11] But with respect to its contentions regarding *how* those claims are infringed, BigBand's response to this interrogatory was, at best, 'thin on substance.' Consistent with the fact that BigBand had to guess because there was no actual commercial product to target, BigBand's charts cite a sum total of *four* documents—one of which was published *after* BigBand sued and another of which does not mention any Imagine products—to support the entirety of its infringement allegations on the key limitations identified by Imagine. Moreover, for a majority of its apparently-asserted claims, BigBand has essentially admitted that it did not have evidence to support infringement at the time it filed suit. For these 307 of its 524 claims, BigBand does not even attempt to contend

---

[10] *See* http://www.bigbandnet.com/index.php/aboutus.html.

[11] Matterer Decl., Exh. F.

that all of the required elements are infringed. Instead, it temporizes that, for one or more elements of the claim, "[i]t is not clear from the sources available to BigBand at this time" how Imagine infringes the patent.[12]

For at least the last six months BigBand has had the opportunity to make an informed evaluation of the infringement of its universe of claims and to supplement its responses to written discovery. By December of last year, Imagine had produced 20,305 pages of documents to BigBand, including design specification documents and PowerPoint presentations regarding Imagine's technology. Despite having had the core of Imagine's technical document production for months, BigBand has neither amended its infringement contentions to allege infringement of every element of its claims, nor has it withdrawn any of its claims. As things stand, BigBand is apparently continuing to allege that Imagine is infringing—in the majority of cases without saying *how*—all 524 of the claims in the patents-in-suit.

BigBand's responses to other interrogatories are similarly deficient, as shown by several examples. In response to Interrogatory 3, which seeks BigBand's basis for its claims of indirect infringement, BigBand fails to identify the alleged direct infringer and the manner which Imagine allegedly induces or contributes to that direct infringement.[13] In response to Interrogatory 7, which seeks a description of any factual support for any of the "secondary indications of nonobviousness", BigBand simply lists those factors, but fails to cite to any fact or document that would tend to show that one of the secondary indications exists for the patents-in-suit.[14]

---

[12] To show its displeasure with these inadequate interrogatory responses, Imagine even sent BigBand's attorneys a draft Rule 11 motion showing how the deficient nature of its responses was further evidence of an insufficient pre-filing investigation. *See* Matterer Decl., Exh. C (Letter from John Benassi to Jack Blumenfeld dated January 11, 2008 and enclosing draft motion).

[13] Matterer Decl. Exh. F.

[14] Matterer Decl. Exh. F.

Similarly, BigBand's protestations that it has produced "75,000 pages" of documents fall flat. The approximately 3,400 documents Imagine has received from BigBand to date are comprised largely of high-level product marketing presentations, press releases, board presentations and roadmaps. Despite the existence of some technical specifications relating to BigBand's products, there are noticeably missing large categories of documents relating to the patentability, validity, infringement, enforceability, ownership, inventorship and/or the scope of the claims of the patents-in-suit. For example, no lab or engineering notebooks or conception and reduction-to-practice documents from the inventors can be identified anywhere in BigBand's production. There also appears to be little in the way of prior art. In other words, it appears that the documents that are the most pertinent to the issues in this case have not been produced by BigBand.

In short, BigBand has rebuffed Imagine's written discovery efforts to understand which claims BigBand *really* intends to assert in this litigation and what the real issues in the litigation are, despite Imagine's repeated meet and confer efforts and even the service of a draft Rule 11 sanctions motion. To try to cut through this impasse, Imagine served a 30(b)(6) deposition notice on December 21, 2007. Plaintiff BigBand objected and refused to produce a witness on any topic. After meeting and conferring, Defendant narrowed its topics and served the First Amended Deposition Notice on February 5, 2008. Continuing its stonewalling, Plaintiff again objected to the First Amended Notice, largely on the grounds that some of the deposition topics allegedly constitute "contention depositions" and/or that deposition topics invaded the attorney-client privilege or comprised attorney work product. Plaintiff also added the boilerplate objection that the topics were "overly broad and unduly burdensome." Although it has not formally responded, BigBand apparently continues to maintain these objections to Imagine's Second Amended 30(b)(6) Deposition Notice, served on April 28, 2008.

7

BigBand's objections are without merit. Tellingly, BigBand has objected to deposition topics that are nearly identical to deposition topics that BigBand has propounded in BigBand's 30(b)(6) deposition notice to Imagine.[15] Even worse, BigBand flatly refused to provide any witness – even to clearly relevant and unobjectionable topics -- until all of its objections to the deposition topics were resolved.

BigBand's conduct is abusive and warrants denial of the present motion.

## III.    ARGUMENT

None of Plaintiff BigBand's objections should be sustained to prevent the noticed deposition from proceeding, especially given Plaintiff BigBand's refusal to provide adequate written discovery answers and narrow its claims from an untenable 524 to a manageable number. In an attempt to break through the log jam of thousands of documents and a multitude of potential deponents so that this case can be manageably tried, Imagine served a Rule 30(b)(6) deposition notice, listing five general topics that would force BigBand to designate the proper witnesses so as to probe factual allegations made by BigBand, as well as several potential defenses without wasting depositions.

As Wright & Miller stated, this is precisely why Rule 30(b)(6) was enacted:

> Rule 30(b)(6) was designated to reduce difficulties that occurred before 1970 in designating the proper corporate officer or agent and to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself.

> Prior to the 1970 amendment the courts had generally held that the party seeking a deposition could not put the burden on a corporation to decide who would appear for it. The present rule rejects that position.

---

[15]    For example, topic number 13 of Imagine's Second Amended Notice asks for testimony on "[t]he first prototype reflecting the reduction to practice of each claim of the patents-in-suit including design, structure, architecture, and methods used." (Matterer Decl. Exh. G). In comparison, BigBand's topic number 3 asks for testimony on "The design, structure, architecture and methods used in the processing of video data in Imagine's ICE and ICEPAC system, including Video On Demand (VOD) functionality." (Matterer Decl. Exh. E).

Wright & Miller, Federal Practice and Procedure, Vol. 8A, Ch. 6, § 2103 at 35 (1994) (emphasis added).

Rather than attempting to comply with the Federal Rules as they currently exist, BigBand would try to roll the clock back to before the Rule 30(b)(6) enactment, which allows large corporations like BigBand to create obstacles by forcing a party to guess which witnesses might have knowledge of a particular topic, each of which would then deflect the questions to a series of other witnesses not present, creating a shell game to thwart the opposing party. As stated in Wright and Miller, unfortunately such shell games have continued after the 1970 amendments.[16]

BigBand has more than ample resources to locate and designate the appropriate witnesses to facilitate this discovery. Therefore, it should not be at all burdensome to BigBand to provide Imagine with access to this information through a 30(b)(6) deposition, let alone unduly so. Rather, it appears that BigBand wants Imagine to laboriously and expensively plod through other discovery means in a slow march toward identifying which of the 524 asserted claims really matter.

Imagine respectfully requests that this Court put an end to BigBand's delay tactics and order BigBand to produce 30(b)(6) witnesses on the five general topics particularly described in Imagine's Second Amended Notice within 30 days. Imagine can complete this deposition in twelve hours.

---

[16] "Consider the remarks made by Judge Frank Theis regarding obstacles encountered by plaintiffs in Dalkon Shield litigation: The project manager for Dalkon Shield explains that a particular question should have gone to the medical department. The medical department representative explains that the question was really [in] the bailiwick of the quality control department. The quality control department representative explains that the project manager was the one with the authority to make a decision on that question. * * * [I]t is not at all unusual for the hard questions posed in Dalkon Shield cases to be unanswerable by anyone from Robins. Lord, The Dalkon Shield Litigation: Revised Annotated Reprimand by Chief Judge Miles W. Lord, 1986, 9 Hamline L.Rev. 7,11." Wright & Miller, Federal Practice and Procedure, Vol. 8A, Ch. 6, § 2103 at 35 (1994).

**A.    Plaintiff BigBand's Objection That Defendant Noticed A "Contention" Deposition Is Weak And Should Be Rejected.**

Plaintiff BigBand objects to many topics on the purported grounds that the topics delve into privileged subject matter and are akin to "contention" discovery or call for legal conclusions.  The Court should overrule these boilerplate objections in acknowledgement that Defendant's notice squarely seeks *facts*, not legal conclusions or attorney work product.

First, it is worth noting that numerous courts – including courts in this District – have held Fed. R. Civ. P. 30(b)(6) deposition notices seeking the factual bases for opposing party's claims or defenses to be proper.  See, e.g., Wyeth v. Impax Labs., Inc., Civil Action No. 06-222-JJF (D. Del. 2007)(Memorandum Order granting Impax Motion to Compel Deposition); Chase Manhattan Mortgage Corp. v. Advanta Corp., 2003 U.S. Dist. LEXIS 18015 (D. Del. 2003); Smith v. General Mills, Inc., 2006 U.S. Dist. LEXIS 19093 (S.D. Ohio 2006); Security Ins. Co. of Hartford v. Trustmark Ins. Co., 218 F.R.D. 29, 33-35 (D. Conn. 2003) (ordering third-party defendant to name Rule 30(b)(6) witness to testify about its denials to third-party complaint); U.S. v. McDonnell Douglas Corp., 961 F.Supp. 1288, 1290 (E.D. Mo. 1997) (overruling work-product objections to Rule 30(b)(6) deposition question and ruling that defendant was entitled to inquire into the factual bases of the government's allegations); Resolution Trust Corp. v. Sands, 151 F.R.D. 616, 620 (N.D. Tex. 1993) (requiring party to "designate someone to state the facts upon which the [party] bases its claims" of negligence, gross negligence and breach of fiduciary duty); Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 272-77 (D. Neb. 1989) (party entitled to discover through Rule 30(b)(6) deposition the factual bases for contentions in counterclaim); Board of Regents v. Nippon Telephone and Telegraph Corp., 2004 U.S. Dist. LEXIS 28819, **15-17 (W.D. Tex. 2004) (improper to refuse to provide Rule 30(b)(6) testimony regarding the factual bases of its affirmative defenses).

The decisions from this District – Wyeth and Chase Manhattan, from this Court and Judge Jordan, respectively – are particularly persuasive.  In Wyeth, counsel before the Court in the instant case, representing different parties, urged very similar arguments regarding

10

"contention" depositions and privilege issues.    There, as here, the plaintiff refused the defendant's efforts to use written discovery to uncover fundamental facts relating to the plaintiff's case and the defendant's defenses. This Court overruled the plaintiff's objections and ordered the Fed. R. Civ. P. 30(b)(6) deposition to proceed, after a showing that the noticed deposition could be completed in a reasonable amount of time.[17]    Defendant Imagine's First Amended Fed. R. Civ. P. 30(b)(6) deposition notice was based upon the notice previously approved by this Court in Wyeth.

Similarly, in Chase Manhattan, the defendant sought a Fed. R. Civ. P. 30(b)(6) deposition to learn facts supporting allegations made by the plaintiff in the complaint.[18]    The plaintiff resisted the deposition, arguing that the topics were overbroad and represented an impermissible inquiry into legal theories.    Judge Jordan overruled the plaintiff's objections and ordered the deposition to proceed finding that, while the topics were broad, they were "within the permitted parameters of inquiry under Rule 30(b)(6)." 2003 U.S. Dist. LEXIS 18015 at *4. Judge Jordan further noted that, while "preparing designated witnesses for Rule 30(b)(6) depositions can be burdensome," "[t]hat burden, however, is to be expected both from the complexities of the litigation itself and from the 'privilege of being able to use the corporate form in order to conduct

---

[17] Matterer Decl., Exh. D.

[18] The disputed deposition topics there included the following: "(39) Any evidence supporting [plaintiff's] assertion that '[defendant] had never provided [defendant's] Monthly Reports ... to [plaintiff] despite [plaintiff's] request for information contained in the [defendant's] Monthly Reports,' as alleged in paragraph 50 of the Complaint; ... (42) Any evidence supporting [plaintiff's] assertion that the reports issued by the trustees for the [defendant]-Sponsored Closed-End Mortgage Securitizations 'had served to mislead the mortgage-backed industry generally for several years,' as alleged in paragraph 61 of the Complaint; (43) Any evidence in support of [plaintiff's] claim that [defendant] 'underreported losses' to the trustee for the [defendant]-Sponsored Closed-End Mortgage Securitizations, as alleged in paragraph 67 of the Complaint; ... (47) Evidence in support of [plaintiff's] contention that, 'one of the components that the market considers in pricing a securitization is the historical losses on other loans that have been securitized by the same issuer,' as alleged in paragraph 105 of the Complaint." 2003 U.S. Dist. LEXIS 18015 at *3, n.1.


business.'" <u>Id.</u> at *4 (citing <u>United States v. Taylor</u>, 166 F.R.D. 356, 362 (M.D.N.C. 1996) aff'd, 166 F.R.D. 367 (M.D.N.C. 1996)). As such, a "contention deposition" can be proper -- and is proper in this case.

As to BigBand's objection that the topics "call for a legal conclusion", the Federal Rules, as well as other courts have rejected the argument that testimony is improper simply because it calls for a legal conclusion, even as to an ultimate issue. Fed. R. Evid. 701-704; Fed. R. Civ. P. 33(b); <u>Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.</u>, 144 F.R.D. 372, 374 (N.D. Cal. 1992).

As to BigBand's claims that a "contention deposition" will necessarily invade the attorney-client privilege and work product, other courts have allowed such depositions to proceed after examining the provisions of Fed. R. Civ. P. 30(b)(6), the applicability of the attorney-client privilege, and the applicability of the work-product doctrine. <u>Smith v. General Mills</u>, 2006 U.S. Dist. LEXIS 19093, *7 (E.D. Ohio 2006).

First, courts recognize that corporations have an obligation to produce witnesses under Fed. R. Civ. P. 30(b)(6). Specifically, pursuant to Fed. R. Civ. P. 30(b)(6), a corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters.'" <u>Smith v. General Mills</u>, at *10 (citing <u>Mitsui & Co. v. Puerto Rico Water Res. Auth.</u>, 93 F.R.D. 62, 67 (D.P.R. 1981) (required corporation to designate a 30(b)(6) spokesperson and imposing fees and sanctions for the failure to do so)). <u>See also</u> <u>United States v. Taylor</u>, 166 F.R.D. 356 (M.D. N.C. 1996) ("Once served with a Rule 30(b)(6) notice, the corporation is compelled to comply, and it may be ordered to designate witnesses if it fails to do so") (citing 8A Charles A. Wright, Arthur R. Miller and Richard L. Marcus, <u>Federal Practice and Procedure</u> § 2103 at 33 (2d ed. 1994)). Thus, absent another, reasonable objection, (which does not exist) Plaintiff BigBand is obligated to name and prepare a person or persons to testify on its behalf.

12

Second, the attorney-client privilege does not preclude inquiry into the factual bases of a plaintiff's claims. It is black-letter law that the attorney-client privilege does not protect facts communicated to an attorney or the factual information itself. Upjohn Co. v. U. S., 449 U.S. 383, 395-96, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). The "privilege attaches to the communication itself, not to the facts communicated." Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 630 (M.D. Penn. 1997) (citing Upjohn Co., 449 U.S. at 395-96 and United Coal Co. v. Powell Constr. Co., 839 F.2d 958, 965 (3d Cir. 1988)). Here, Defendant Imagine has made clear – both in its noticed topics and during its meetings and conferences with opposing counsel – that it does not seek client-lawyer communications but, instead, seeks the facts supporting Plaintiff's claim – facts that will be critically relevant to defending against those claims. This essential distinction renders Plaintiff's boilerplate assertion of the attorney-client privilege improper. See Protective Nat'l Ins. Co., 137 F.R.D. at 279. Consequently, Plaintiff BigBand's witness must be prepared to recite the *facts* upon which Plaintiff relies to support averments in its complaint, even if some of those facts were originally collected by Plaintiff's lawyers from BigBand.

Third, Plaintiff's purported fear that attorney work product will be uncovered should be assuaged by the fact that Plaintiff's attorneys will be present at the deposition. The work-product doctrine is not implicated unless the deposing party poses questions to the corporate deponent which "improperly tend to elicit the mental impressions of the party's attorneys." Protective Nat'l Ins. Co., 137 F.R.D. at 283. While Defendant Imagine will strive to avoid any such questions, the expected presence of Plaintiff BigBand's counsel resolves this objection: Plaintiff's own counsel can instruct the witness not to answer questions which may implicate attorney work product.

The logic of the above cases applies here. BigBand brought this lawsuit and must be able to substantiate the factual basis for its allegations. Yet, when it is called upon to do so, by deposition, BigBand argues that the information sought by Imagine's deposition topics is better suited to written discovery. BigBand has had months in which to supplement its interrogatory

13

responses, document production and responses to requests for admission to address the topics Imagine's deposition notice is seeking.  It is simply unfair to allow BigBand to hide the ball by serving blatantly insufficient written discovery responses, failing to supplement those responses, and then hiding behind those same inadequate responses and the cry of "contention deposition!" when requested to produce a 30(b)(6) witness.

As such, BigBand's three principal objections, *i.e.*, that the noticed topics call for contention discovery, that the noticed topics call for a legal conclusion, and that the noticed topics invade the attorney-client or work product privileges, are all lacking and should be overruled.

### B.    Categories In The Amended Notice Directly Relate To Specific Issues In This Case And Would Yield Relevant Substantive Evidence To Narrow Issues For Trial

Defendant Imagine surgically targeted discrete, relevant, and factual subject areas in its Second Amended Notice; Defendant seeks information bearing directly on the patent claims before the Court, in an attempt to solidify the issues and shorten the trial. For example, Defendant seeks to learn: (1) the factual basis for Plaintiff's assertion of infringement – *i.e.*, what did Plaintiff's employees and non-attorney agents know about Defendant's technology and where and when did they gain this information; (2) the details surrounding when Plaintiff's (alleged) inventions were conceived and when they were reduced to practice; and (3) what prior art was Plaintiff aware of while applying for the patents-in-suit.  In addition, Defendant Imagine's Second Amended Notice sets forth the specific topics for each of these categories. Below, under general category headings, Defendant Imagine explains the relevance and importance of each category to this case. (Headings also reflect the estimated time for deposition of each topic, and the specific deposition topics included in the general category.)

| Category No. 1  (Detailed Topics 1-10) | Time Needed |
|---|---|
| Factual Basis of Contention that Defendant Imagine Infringes and Which of the 524 Claims | 4 hours |

14

| are Infringed | |
|---|---|

The first category relates to Plaintiff BigBand's factual basis for averring that Defendant Imagine infringes Plaintiff's patents. Plaintiff must have had a basis for filing in the first place. Moreover, Plaintiff has had 11 months to further refine its infringement case and six months with experts reviewing Imagine's documents, so it should be easy for BigBand to determine which claims are allegedly infringed by Imagine's one single commercial product, and to explain how that alleged infringement occurs. If no such explanation exists, the category addresses other motivations Plaintiff may have to file suit. Detailed topics include the factual basis for Plaintiff's allegation that Defendant's accused products contain five key claim limitations of the independent claims:

| LIMITATION | INDEPENDENT CLAIMS |
|---|---|
| "Session manager" | '477 claims 1-5, 7-8 |
| "Non addressable stream output port" | '477 claim 28 |
| "Aggregate bandwidth of received packets exceeds the bandwidth of limited bandwidth media" | '477 claim 18 |
| "Select basic media data units to be modified in response to a modification priority" | '619 claim 1 |
| "Modification priority" | '087 claim 1 |

This category's relevance and significance are clear: if Plaintiff BigBand has no evidence that Defendant's products meet the claim terms, Plaintiff cannot demonstrate liability for patent infringement. Moreover, if Plaintiff cannot provide evidence of its good-faith basis to believe infringement existed at the time Plaintiff filed suit, Defendant should be entitled to discover alternative motivations for the suit for the purposes of seeking remedies under 35 U.S.C. § 285 or Fed. R. Civ. P. 11.

| Category No. 2 (Detailed Topics 11-29 | Time Needed |
|---|---|
| Validity of BigBand's patents, including dates of conception and reduction to practice, and any secondary factors supporting non-obviousness, also any prior art sales of products practicing the alleged invention. | 5 hours |

15

The second general category relates to the validity of the patents-in-suit.  Specifically, it addresses Plaintiff BigBand's alleged conception and reduction to practice of its claimed invention, as well as evidence of any "objective" factors that might support a claim of non-obviousness, BigBand's products that practice the alleged inventions, the date and circumstances of the first sale or public use of those products, and other invalidity issues.[19]  The dates of an invention's conception and reduction to practice are critical to a patent case because they determine the point in time before which prior art and certain other events can invalidate a patent and dates of conception and reduction to practice must be disclosed as to <u>each claim</u>.  <u>See, e.g.</u>, <u>Mahurkar v. C. R. Bard, Inc.</u>, 79 F.3d 1572, 1576 (Fed. Cir. 1996)("Section 102(a) explicitly refers to invention dates, not filing dates.  Thus, under section 102(a), a document is prior art only when published before the invention date").  Accordingly, so that Defendant Imagine may challenge the validity of the patents-in-suit, either generally or as to each claim, it must be allowed to ascertain the facts relating to Plaintiff BigBand's asserted dates. This necessarily includes any research and development that Plaintiff BigBand contends support its proposed conception and reduction to practice dates.

Thus far, BigBand refuses to clearly state the dates on which it alleges that conception and reduction to practice occurred.  Additionally, no lab notebooks showing conception or reduction to practice have been produced.  By providing a vague response to interrogatories in this category, Plaintiff BigBand all but begs a directed deposition to pinpoint the relevant dates.  Plaintiff's interrogatory response hedges that the inventions at issue were developed sometime between 1999 and 2001. But, in a quickly-developing field of technology such as this one, significant amounts of prior art may have been published during this 3-year window. Defendant Imagine is entitled to know the specific date(s) when Plaintiff BigBand believes it conceived of, and reduced to practice, its asserted claimed inventions on a claim-by-claim basis.  A 30(b)(6)

---

[19]  Matterer Decl., Exh. F.

deposition is particularly appropriate, here: A deposition allows Defendant Imagine efficiently to obtain this information at a single session rather than put Defendant to the labor and expense of deposing all six of the inventors on all three patents-in-suit (as well as any other individuals who may have been involved in the development of Plaintiff's products). Moreover, this deposition will allow Imagine to probe BigBand's disingenuous offer that the conception and reduction details, which according to BigBand "relate to years of research and development efforts" (Brief at 2) can be found somewhere in the 75,000 pages of documents that it produced. If any party bears the burden of deciphering these documents and staking a claim that the conception and reduction to practice occurred prior to the filing date of the patents-in-suit and prior to relevant prior art, it is certainly BigBand, the owner of the patents and Plaintiff, not Defendant Imagine.

| Category No. 3 (Detailed Topics 31-33) | Time Needed |
|---|---|
| Prosecution of the Patents-in-Suit and Inequitable Conduct | 1 hour |

Defendant Imagine also asserts that Plaintiff BigBand's inequitable conduct during the patent-application process renders Plaintiff's patents-in-suit unenforceable. Specifically, for example, Plaintiff BigBand failed to disclose a number of references found to the patent examiner on the application that resulted in the '477 patent, after this prior art was found in a co-pending PCT patent application search report.[20]   Similar misconduct occurred during the prosecution of the other patents-in-suit, and this behavior will likely render all of the patents-in-suit unenforceable. McKesson Information Solutions, Inc. v. Bridge Medical, Inc., 487 F.3d 897 (Fed. Cir. 2007). When Imagine tried to obtain basic information about what prior art references BigBand was aware of at the time its inventors filed the patent applications, BigBand stalled and

---

[20] For a more detailed recitation of the variety of ways in which BigBand appears to have committed inequitable conduct, see Imagine's Response to BigBand's Interrogatory Nos. 7- 9. Matterer Decl., Exh. H.

refused to directly answer.[21]   Accordingly, Plaintiff's prosecution of its patents-in-suit and its knowledge of (and/or failure to disclose) prior art and arguments against patentability to the Patent Office is the subject of Defendant Imagine's third topic.[22]   Because an applicant's duty of candor to the Patent Office extends to inventors and others involved in the patent-application process, this category focuses directly – and with particularity – upon who had knowledge of the withheld prior art references and examiner arguments.   See Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd., 394 F.3d 1348, 1351 n.3 (Fed. Cir. 2005) ("In the context of an inequitable conduct determination, the 'applicant' includes anyone under a duty to disclose material information to the PTO pursuant to 37 C.F.R. section 1.56, namely: the inventor, the prosecuting attorney or agent, and anyone associated with the inventor or the assignee who is substantively involved in the preparation or prosecution of the application").   The full extent of Plaintiff BigBand's knowledge (which may involve numerous individuals with a duty of candor to the Patent Office) is ripe for deposition, and given BigBand's stonewall tactics on the most basic facts related to this defense, Defendant Imagine's deposition should be allowed to proceed.

| Category No. 4 (Detailed Topics 34-56) | Time Needed |
|---|---|
| Alleged damages, including the Panduit factors, the Georgia Pacific factors, and Licensing of the Patents-in-Suit | 2 hours |

These topics relate generally to the factual basis for BigBand's claim for damages.   At the time the lawsuit was filed Imagine did not have any commercially available product so there could not have been any lost sales.   Currently, Imagine has one product that is being sold -- its

---

[21] See BigBand's Responses to Imagine's Requests for Admission, Nos. 1-22; Matterer Decl., Exh. I.

[22] Matterer Decl. Exh. G.  With six inventors, and a variety of other employees and patent attorneys involved in the invention and patenting process, and thus subject to the duty of candor under 37 C.F.R. section 1.56, BigBand essentially invites Imagine to go on a wild goose chase and use up all of its depositions on this single issue.  Instead, BigBand should prepare and submit one witness to allow Imagine to at least address the basic facts.

Broadcast System using ICE and ICE Q technology -- and BigBand still cannot point to a single lost sale, contract or customer. This again calls into question the motive of the lawsuit. Since BigBand has yet to set forth any cogent explanation for what its damages theory is, deposition on these topics are particularly relevant, and will no doubt illustrate the weaknesses in – or complete lack of support for – BigBand's claims for damages. If there is any topic which will cause BigBand to be reasonable and increase settlement possibilities, it is this topic.

### C.    The Scope Of Defendant's Deposition Notice Is Proper In View Of The Factors Set Forth In Fed. R. Civ. P. 26; Plaintiff BigBand's Boilerplate Objections Should Be Rejected

Plaintiff BigBand's response to Defendant's First Amended Notice included continued objections to many topics as overbroad and unduly burdensome.[23]  Plaintiff's boilerplate objections are unsupportable. Fed. R. Civ. P. 26 sets forth factors to determine whether a discovery request is *unduly* burdensome:

> Rule 26(b)(2)(iii) provides five factors to help the Court determine whether the burden or expense of a discovery request is proportional to the needs of the case: ... (A) the needs of the case, (B) the amount in controversy, (C) the parties' resources, (D) the importance of the issues at stake in the litigation, and (E) the importance of the proposed discovery in resolving the issues.

Hagemeyer N. Am., Inc. v. Gateway Data Sci. Corp., 222 F.R.D. 594, 600 (E.D. Wis. 2004) (internal quotation of Rule 26(b)(2)(iii) omitted). Each factor is examined below:

### 1.    The "needs of the case" support use of deposition as the most efficient discovery vehicle to flesh out any supporting facts, to narrow the issues

As discussed in detail above, Defendant Imagine needs this deposition to narrow this case to manageable proportions and uncover the basis of the critical issues in this case, including Plaintiff's infringement position, evidence of conception and reduction to practice of the claimed inventions, prosecution of the patents-in-suit, Plaintiff's knowledge of and facts underlying the pertinent prior art, and the basis for Plaintiff's claim for damages. A deposition pursuant to Fed.

---

[23]  Matterer Decl., Exh. J at 2.

R. Civ. P. 30(b)(6) is particularly important in view of Plaintiff BigBand's delays and obfuscation of discovery by other means. Furthermore, a deposition is the most efficient way to proceed with discovery on these issues.

>       **2.      Where the claimed "amount in controversy" is the existence of Defendant Imagine, Plaintiff should not be allowed to evade discovery**

If Plaintiff BigBand's current infringement contentions, and its recent positions taken with regard to BigBand's pending motion to compel are to be believed, BigBand is taking the position that every single product that Imagine has commercialized, prototyped, considered, or even thought about, is accused of infringement and should be the subject of royalty payments.[24] Plaintiff BigBand seeks to stifle Imagine's entire business, making this potentially a "bet the company case" for Imagine. Because of the magnitude of the potential impact this case could have on such an early-stage startup, Plaintiff should not be allowed to play word games to evade discovery. This case is too important to prevent full discovery of critical issues.

>       **3.      The "parties' resources" favors Plaintiff; proceeding with the deposition would level the field**

Plaintiff BigBand has ample resources to locate and designate the appropriate witnesses for the requested deposition. Plaintiff BigBand is a publicly-traded company with a market capitalization of approximately $440 million and first quarter 2008 revenues of nearly $40 million. In contrast, Defendant Imagine is a startup in only its second round of financing. Moreover, as the plaintiff who filed this lawsuit, BigBand should be required to disclose the facts upon which it bases its accusations. It is not unduly burdensome for Plaintiff BigBand to provide its much smaller rival with access to information Plaintiff reasonably already has (and has collected) through a Fed. R. Civ. P. 30(b)(6) deposition. To the extent a financial burden

---

[24]  In fact, Imagine now has only one commercial product, but BigBand wants access to Imagine's ongoing research as well.

exists, however, that burden properly falls upon Plaintiff BigBand given Plaintiff's previous evasions of Defendant's written discovery.

    **4.**    **The "importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving and narrowing the issues" favors allowing the deposition to proceed**

Efficient resolution of critical issues in this case turns on Defendant Imagine's ability to take this deposition on these focused topics. These issues include the factual basis for BigBand's allegations of patent infringement, and conception and reduction to practice of the claimed inventions – which is critical to the validity analysis of the patents-in-suit. This should not be unduly burdensome to BigBand since this suit involves only one product. The prosecution of the patents and the facts underlying the statements in those patents are important to several crucial issues, including claim construction, validity, inequitable conduct and enablement. The inequitable conduct issues also will likely turn on Plaintiff BigBand's knowledge of the pertinent prior art cited in co-pending patent applications, and its reasons for concealing this art from the Patent Office.

In summary, the Court should conclude that the requested testimony is neither improper nor unduly burdensome and that the deposition should be ordered to proceed as noticed.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant Imagine respectfully requests that the Court deny Plaintiff BigBand's Motion for a Protective Order and instead order BigBand to produce one or more witnesses for deposition on the topics set forth in Defendant Imagine's Second Amended Fed. R. Civ. P. 30(b)(6) Deposition Notice.

Dated: May 19, 2008

                                    */s/ Mary B. Matterer*
                                      MARY B. MATTERER (I.D. No. 2696)
                                      MORRIS JAMES LLP
                                      500 Delaware Avenue, Suite 1500
                                      Wilmington, DE 19801
                                      Telephone: 302-888-6800
                                      Email: mmatterer@morrisjames.com

OF COUNSEL:
JOHN M. BENASSI (Cal. Bar No. 74137)
ALEXANDER BRAINERD (Cal. Bar No. 42722)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA  92122-1246
Telephone:  858-450-8400
Facsimile:  858-450-8499
Email :  john.benassi@hellerehrman.com

Attorneys for Defendant and Counterclaim Plaintiff
IMAGINE COMMUNICATIONS, INC.