IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIGBAND NETWORKS, INC., )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>IMAGINE COMMUNICATIONS, INC., )<br>)<br>      Defendant. ) | C.A. No. 07-351 (JJF) |

**BIGBAND'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
FURTHER RESPONSES TO WRITTEN DISCOVERY**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
    *Attorneys for Plaintiff BigBand Networks, Inc.*

OF COUNSEL:

Peter P. Chen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

James L. Day
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

May 30, 2008

# TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| STATEMENT OF FACTS | 3 |
| ARGUMENT | 6 |
|     A.   Imagine Must Provide Support for Its Non-Infringement Contentions | 7 |
|     B.   Imagine Must Provide Real Support for Its Invalidity Contentions | 8 |
|     C.   Imagine Must Produce Documents that Describe How Its Products and Services Work | 8 |
|     D.   BigBand Is Willing to Confer Regarding a Revised Schedule That Will Streamline This Case | 10 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**CASES**                                                 **PAGE(S)**

*Schlesinger Inv. P'ship v. Fluor Corp.*,
   671 F.2d 739 (2d Cir. 1982)..................................................................................7

*Sea Star Line, LLC v. Emerald Equip. Leasing Inc.*,
   2007 U.S. Dist. LEXIS 95070 (D. Del. Dec. 28, 2007)..................................7

*Townshend Intellectual Property, L.L.C. v. Broadcom Corp.*,
   2007 WL 2462152 (N.D. Cal. Aug. 29, 2007). ...............................................7

**STATUTES**

   35 U.S.C. § 271.................................................................................................2, 5, 9

1.

## INTRODUCTION

After BigBand filed its Motion to Compel (D.I. 43), for the first time in nearly a year since this case's inception and in months of meeting and conferring, Imagine announced that BigBand's discovery requests relate to "nonexistent products" and seek documents that "don't exist." *See* Declaration of Karen Jacobs Louden ("Louden Decl.") Ex. 1 (Letter from Benassi to Graves of 5/12/08); Ex. 2 (Letter from Benassi to Blumenfeld and Graves of 5/15/08); D.I. 58 at 1. To say that these recent assertions are news to BigBand is an understatement. For, if BigBand's Motion is based on a "false premise" about nonexistent products (D.I. 58 at 1), then so, too, are Imagine's statements about its products to customers on its website and at trade shows.

Although Imagine now claims it has no Switched Digital Video (SDV) product, in product literature relating to Imagine's ICE Broadcasting System, supposedly its one commercial product, Imagine touts to its customers its "ICE SDV System." Louden Decl. Ex. 3 (May 7, 2008 Imagine Press Release). This suggests that even if an SDV solution is not yet available for sale, it does exist and is capable of being demonstrated.[1] And although Imagine claims it is not currently developing a Quality On Demand (QOD) gateway, its website description of the ICE™ Gateway appears virtually identical to the description of what formerly was called the QOD™ Gateway, implying that the gateway *is* being developed. *Compare* Louden Decl. Ex. 4 at 5 (June 5, 2007 Technical Glossary screen shot) *with* Ex. 5 (May 14, 2008 Technical Glossary screen shot).

---

[1] Imagine in fact conceded that this product will be available by no later than the third quarter of this year (*e.g.*, as early as July). Louden Decl. Ex. 2 at 1 (Letter from Benassi to Blumenfeld and Graves of 5/15/08).

It is difficult to understand how Imagine can publicly tout these technologies to investors, customers and the industry at large, yet disclaim them when it comes to BigBand's discovery requests.[2] BigBand also is puzzled by Imagine's line-drawing between "commercially available" and other products. Regardless of whether Imagine's technologies are at the concept stage or under development, they still may infringe the patents-in-suit if they are made, used, or offered for sale in the United States. 35 U.S.C. § 271. Imagine cannot hide behind this fabricated distinction and avoid producing documents relating to its accused products.

Moreover, Imagine's attempt to divert attention from its own discovery shortcomings by suggesting that BigBand wishes to "keep alive indefinitely" "524 functional claims" (D.I. 58 at 1-2) is patently incorrect, as Imagine well knows.[3] Rather, as BigBand stated during meet and confer discussions and in every one of its recently-filed briefs, it fully intends to limit the number of claims at issue in this case. BigBand cannot complete that process, though, until after Imagine provides meaningful invalidity

---

[2] Indeed, the documents in which Imagine has lauded its SDV and QOD technologies in the past year are numerous and unequivocal. *See* Louden Decl. Ex. 6 (March 2007 article in which Imagine's CEO references the "'Quality-On-Demand Gateway'"); Ex. 7 (Apr. 23, 2007 Imagine Press Release touting the SDV system, comprising an "SDV Staging Processor and the Quality On Demand Gateway"); Ex. 8 (Apr. 30, 2007 Imagine Press Release announcing plans to showcase Imagine's QOD "Product Suite" at the 2007 NCTA Cable Show); Ex. 9 (June 15, 2007 article discussing claims of "'jaw dropping'" reaction to Imagine's SDV solution); Ex. 10 (Jul. 1, 2007 white paper mentioning benefits of leveraging Imagine's solution for SDV); Ex. 11 (Jan. 14, 2008 PowerPoint slides depicting SDV and VOD network architecture); and Ex. 12 (Miscellaneous Imagine brochure pages discussing Imagine's QOD Product Suite, including SDV Staging Processor and QOD Gateway).

[3] *See* D.I. 58 at 10, where Imagine admits that BigBand is not insisting on keeping all current claims in this dispute indefinitely.

and non-infringement contentions and produces source code and critical documents describing the design and implementation of its products. Although Imagine has produced more "technical" documents within the last week or so, it still has not said whether or when it will complete its production of the documents BigBand needs. Imagine's proposed schedule would require BigBand to limit the number of claims before Imagine provides its source code or completes its production of technical documents, and therefore is illogical and improper. BigBand is willing to mediate this case and also is willing to confer with Imagine to create a logical revised schedule.

## STATEMENT OF FACTS

In its Opposition, Imagine attempts to turn the tables on BigBand by complaining about BigBand's discovery responses and, in particular, its infringement charts. D.I. 58 at 3. Notwithstanding these current complaints, Imagine has never moved to compel additional discovery from BigBand.[4] In fact, BigBand provided thorough written responses to Imagine's discovery last fall, including infringement charts setting forth on a claim by claim basis the facts of which it was aware at the time that support its infringement allegations. Louden Decl. Ex. 13 at Attachments A-C (BigBand Responses to Imagine's First Set of Interrogatories). At the time, BigBand was aware of publicly available information that demonstrated Imagine's infringement, including an Imagine published patent application, and BigBand utilized that information to prepare claim charts describing its infringement contentions on an element by element basis for all

---

[4] Imagine also repeats yet again the saga of how it contemplated filing a Rule 11 motion, and it appends yet another copy of the draft motion to its Opposition. *See* D.I. 58 at 3 at n.3; *see also* D.I. 59, Exh. A. Imagine has never filed that Motion, however, instead preferring to flaunt it in connection with its various briefs.

claims. BigBand also produced approximately 75,000 pages of documents in response to Imagine's requests, and plans to produce in excess of 200,000 additional pages of documents in the next week or so.

By contrast, Imagine provided little support for its affirmative defenses and counterclaims of invalidity and non-infringement. With respect to invalidity, Imagine merely provided a list of supposed prior art, without describing how that prior art corresponds to the claims at issue or offering any other facts to support its contentions. D.I. 44 Ex. 5 at 6-10 (Imagine Responses to BigBand's First Set of Interrogatories). Imagine's non-infringement contentions were similarly incomplete, only identifying in a conclusory manner "at least" one element of the claims allegedly missing from its products. Perhaps most critically, Imagine withheld numerous categories of responsive documents relating to the design and implementation of its accused products.

BigBand engaged in extensive meet and confer discussions with Imagine to try to obtain the requested information informally. Instead, Imagine has repeatedly sought to hold BigBand to a timeline for limiting the number of claims at issue in the case without making any commitment on its part as to when it will complete its document production. BigBand has repeatedly informed Imagine that to limit the number of claims, it needs Imagine's invalidity contentions (at least as to the independent claims)[5], its non-infringement contentions, and responsive design and engineering documentation for its products and services. *See* D.I. 44 Ex. 4 (Letter from Graves to Benassi of 4/24/08). At

---

[5] On this point, BigBand notes that it agreed to accept invalidity charts as to only the independent claims early on during the meet and confer process. *See, e.g.*, D.I. 44 Ex. 2 at 1 (Letter from Minton to Gratzinger of 2/20/08). This effort to compromise did not just occur in the midst of briefing on this Motion, as Imagine would have the Court believe. *See* D.I. 58 at 4, 11.

Imagine's request, BigBand specifically identified categories of documents that have not been produced that BigBand needs to complete the claim limitation process. *Id.* at 2, 3. When Imagine failed to respond in any way, BigBand filed its motion to compel (D.I. 42).

It was only after BigBand filed its motion and Imagine filed a motion to limit claims that Imagine produced some additional documents.[6] Imagine also asserted for the first time that BigBand's document requests are directed to supposedly "nonexistent" products. Louden Decl. Ex. 1 (Letter from Benassi to Graves of 5/12/08).[7] In a subsequent letter and in its Opposition, Imagine continues to assert this distinction between commercial and other products as a basis for withholding the requested documents. Louden Decl. Ex. 2 (Letter from Benassi to Blumenfeld and Graves of 5/15/08); D.I. 58 at 1, 4, 6, 13. Although it is well-established that infringing activities under 35 U.S.C. section 271 are not limited to commercial products alone, Imagine attempts to use this contrived distinction against BigBand, suggesting that BigBand's document requests are improper to the extent they do not target "commercial" products. Morever, BigBand is entitled to all responsive documents, whether or not they are "informal and ad hoc," (D.I. 58 at 5) or relate to products that are not yet commercially

---

[6] These additional documents appear to be responsive to some categories of documents BigBand requested, but not others. Imagine still has not produced, for example, electronic documents of key custodians or source code. It also still refuses to say whether it will produce the requested documents (or confirm whether they exist) or provide any date by which it will complete its production of the pertinent design and implementation materials.

[7] At the same time, though, Imagine conceded that at least one of these "nonexistent" products will be available in the third quarter of this year. Louden Decl. Ex. 2 at 1 (Letter from Benassi to Blumenfeld and Graves of 5/15/08).

available (*id.* at 6). BigBand requires these documents, including Imagine's source code, to complete the claim limitation exercise for which Imagine has been clamoring. This is why Imagine's proposed schedule (*id.* at 7-8), which seeks to require BigBand to limit the number of claims before Imagine provides the requisite information, is untenable.

After months of stalling and after the parties filed their motions, Imagine also finally produced invalidity claim charts. Those charts, however, still merely list numerous prior art references next to each claim element, and do not to provide any description of how the prior art references supposedly correspond to the claims. It also does not provide any indication of which references it is combining or any explanation of why one skilled in the art would combine the references.

## ARGUMENT

Imagine's posturing to the contrary, this is not a David and Goliath situation. Though it is publicly-traded, BigBand is hardly the mammoth company that Imagine tries to portray, and its sole purpose is not to run Imagine out of business.[8] *See* D.I. 58 at 8-9. Instead, BigBand simply desires to protect its patented inventions and is entitled to the discovery necessary to prosecute its case.

---

[8] On a related note, BigBand cannot understand why Imagine repeatedly persists in accusing BigBand of interfering with its financing efforts (D.I. 58 at 8-9), when Imagine has admitted that such allegations are not relevant to any claim or defense in this case, and in fact has refused to provide discovery on this topic. *See* D.I. 44 Ex. 2 at 2-3 (Letter from Minton to Gratzinger of 2/20/08). Imagine's discussion of its financing efforts therefore serves no purpose other than to be inflammatory.

### A. Imagine Must Provide Support for Its Non-Infringement Contentions

As set forth in greater detail in BigBand's Motion (*see* D.I. 43 at 7-9), Imagine must provide adequate support for its affirmative defense and counterclaim of non-infringement, in response to BigBand's Interrogatories Nos. 10 and 11. Imagine has had charts describing BigBand's factual support for its infringement contentions since last fall, and Imagine should be able to respond in kind with respect to its non-infringement contentions. To date, Imagine has not identified any facts supporting its assertion that certain claim elements are missing from the accused products. It also refuses to identify all elements on which its non-infringement contentions are based. This leaves BigBand and the Court susceptible to surprise at trial, which is unacceptable and defies the federal rules governing discovery. *See Sea Star Line, LLC v. Emerald Equip. Leasing Inc.*, No. 05-245-JJF-LPS, 2007 U.S. Dist. LEXIS 95070, at *16-17 (D. Del. Dec. 28, 2007); *see also Schlesinger Inv. P'ship v. Fluor Corp.*, 671 F.2d 739, 742 (2d Cir. 1982).

And, Imagine still unilaterally conditions its proper response to Interrogatories Nos. 10 and 11 on BigBand first limiting the number of claims involved in this case and updating its infringement contentions. This argument is circular, however, because BigBand did everything it could with the information in its possession. Imagine must provide some facts supporting its defenses and, more importantly, it must provide documents that will enable BigBand to compare how Imagine's products function with the patents-in-suit and thereby focus on the claims really in dispute. Thus, this case clearly is different from *Townshend Intellectual Property, L.L.C. v. Broadcom Corp.*, No. C 06-05118 JF, 2007 WL 2462152 (N.D. Cal. Aug. 29, 2007), cited by

Imagine, where the plaintiff had not provided even preliminary contentions. As a compromise, however, BigBand is willing to accept Imagine's non-infringement contentions as to the independent claims until such time as BigBand limits the number of asserted claims.

### B. Imagine Must Provide Real Support for Its Invalidity Contentions

Although Imagine has now produced invalidity charts as to the independent claims, the charts do not provide any description of how the prior art references allegedly correspond to the claims. Imagine simply lists a number of prior art references next to each claim element, without any indication of which references it purports to combine or any explanation of why one skilled in the art would combine the references. BigBand requests that Imagine be required to provide the full basis for its contentions.

### C. Imagine Must Produce Documents that Describe How Its Products and Services Work

Even now as the parties are completing briefing on BigBand's Motion, Imagine still will not say whether it still possesses responsive documents relating to its technologies and whether it will produce such documents. At various times, Imagine has claimed to be done with its production, not to possess relevant documents because they don't exist, or to be done producing "virtually all" of its technical documents. *See generally* D.I. 58. But BigBand needs, and deserves, a straight answer. In addition, although Imagine had ample opportunity during the meet and confer process to explain and clarify the status of its document production, Imagine prefers to work through these issues in motion briefing instead. Then, it goes so far as to fault BigBand for doing

exactly what Imagine asked it to do – namely, list the few categories of documents it had received in Imagine's earlier productions and identify the categories of documents it still needs in order to complete the claim limitation process. Again, *per Imagine's request*, BigBand did just that, trying to enumerate the types of design and implementation documents it requires but has not received. *See* D.I. 44 Ex. 4 at 2-3 (Letter from Graves to Benassi of 4/24/08). Because BigBand cannot possibly know the exact types or titles of Imagine's documents, it did the best it could, and yet Imagine chides BigBand for setting forth these "preconceived categories." D.I. 58 at 12, 13 at n. 30. Imagine's arguments thereby seem to mask whether Imagine truly does not possess certain documents, or whether it is withholding them on the basis that they are not within the categories listed in BigBand's meet and confer correspondence. *See, e.g., id.*

Imagine's distinction between documents relating to "commercially available" and other products is similarly evasive and unavailing. Products may infringe even if they are not on the market. 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention . . . infringes the patent."). Furthermore, although it claims in its briefing that certain of its technologies do not (yet) exist, Imagine has touted those very same products to the public in its marketing materials and on its website since at least last year. *See* discussion, *supra* at 1-2. It should have no legitimate reason to withhold documents relating to those products, yet such documents still do not appear in its productions to BigBand. Imagine also acknowledges that it has yet to produce source code and electronic documents of key custodians. Imagine should be required to produce the design and implementation

documents it does have and/or state definitely whether there are categories of documents it does not possess and what those categories are.

        D.      BigBand Is Willing to Confer Regarding a Revised Schedule That Will Streamline This Case

Imagine makes much of its recently-proposed, revised case schedule, but that schedule simply is impractical. BigBand also is aware of the current schedule and upcoming deadlines; indeed, it has been working for many months to obtain the necessary discovery from Imagine, so that the case may progress. This goal is not helped, however, by forcing BigBand to make an uninformed decision and dispose of claims in an arbitrary fashion. A more practical approach would be to establish realistic deadlines for certain targeted discovery to be completed, after which BigBand would provide a revised list of claims in dispute. BigBand is willing to mediate this case and also remains willing to confer with Imagine and try to construct a workable schedule that will accomplish these goals. For example, BigBand proposes the following schedule:

| | |
|---|---|
| November 1, 2008: | Close of fact discovery |
| November 5, 2008: | Opening Markman briefs due |
| November 25, 2008: | Answering Markman briefs due |
| Week of December 15, 2008: | Markman hearing |
| 30 days after Markman Order: | Opening expert reports due |
| 60 days after Markman Order: | Rebuttal expert reports due |
| 90 days after Markman Order: | Close of expert discovery |
| April 17, 2009: | Case dispositive motions filed |
| Late June, 2009: | Pretrial conference held |

Finally, BigBand will meet and confer with Imagine regarding its proposed protocol for reviewing source code and its proposed search terms for review and production of emails.

## CONCLUSION

For the foregoing reasons, BigBand respectfully requests that the Court enter an order compelling Imagine to provide complete responses to the written discovery at issue.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

---

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
klouden@mnat.com
  *Attorneys for Plaintiff BigBand Networks, Inc.*

OF COUNSEL:

Peter P. Chen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

James L. Day
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

May 30, 2008

2346888

## CERTIFICATE OF SERVICE

I, Karen Jacobs Louden, hereby certify that on May 30, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Mary B. Matterer
> MORRIS JAMES LLP

I also certify that copies were caused to be served on May 30, 2008 upon the following in the manner indicated:

### BY HAND & EMAIL

Mary B. Matterer
Morris James LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE  19899

### BY EMAIL

John M. Benassi
Christopher Longman
Heller Ehrman LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA  92122-1246

*/s/ Karen Jacobs Louden*
Karen Jacobs Louden