IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIGBAND NETWORKS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> IMAGINE COMMUNICATIONS, INC., <br><br> Defendant and Counterclaim Plaintiff. | Civil Action No. 1:07-cv-00351 JJF <br><br> **JURY TRIAL DEMANDED** |

**REPLY MEMORANDUM IN SUPPORT OF IMAGINE COMMUNICATIONS'
MOTION TO LIMIT CLAIMS**

I.   **INTRODUCTION**

The plaintiff BigBand sued its smaller competitor Imagine a year ago, asserting every single claim in three different patents: a total of 524 claims in all. Having failed to persuade BigBand to agree to reduce the number of claims it is asserting to a reasonable number—or even to agree to a firm timetable for doing so—Imagine has moved the Court for an order requiring BigBand to select a limited subset of its prolix and duplicative patent claims.

The most telling feature in BigBand's opposition to Imagine's motion is that BigBand *still* will not offer Imagine (or the Court) anything more than a vague assurance that BigBand has plans to reduce the number of its asserted claims at some point in the future. BigBand does not say *when* it intends to do so. BigBand offers no counter-proposal to the schedule Imagine has proposed both in correspondence with BigBand and

in briefing to the Court.[1] Rather, BigBand simply says it needs more discovery, without saying precisely what discovery it purports to require. Moreover, though BigBand attacks Imagine's proposal that BigBand be limited to ten asserted patent claims, and vaguely suggests that it intends to limit its claims sometime in the indefinite future, BigBand does not say *how many* claims it intends to pursue. BigBand offers no assurance that its self-imposed 'limited' number of claims, whenever BigBand gets around to choosing them, will not still be in the hundreds.

Instead of offering any concrete steps for winnowing down a set of claims that BigBand itself admits is untenably large, BigBand instead expends considerable energy in its opposition arguing simply that it must take additional discovery—including discovery concerning Imagine products that are, in essence, still on the drawing board and that were not even conceived at the time BigBand filed its lawsuit.[2]

BigBand refuses to believe that Imagine has only one commercial product and that pertinent documents regarding that product have been produced.[3] That is why it is hunting for future or non-existent products.

As addressed in more detail in Imagine's opposition to BigBand's motion to compel, BigBand's position seems to be that it can sue Imagine once, and then—for as long as it can keep the issues open—use the perpetual lawsuit as a mechanism to gain

---

[1] *See* Imagine's Opposition to Motion to Compel Further Responses to Written Discovery, DI #58 at 7-8.

[2] Aside from the standing and jurisdictional issues involved in filing a "placeholder" premature lawsuit to target products still in research and development so that when and if they are developed they can be netted in the lawsuit, BigBand's strategy is fundamentally unfair.

[3] *See* Declaration of Ron Gutman in Support of Imagine's Opposition to Motion to Compel ("Gutman Decl."), DI #61. For the Court's convenience, a copy of the Gutman Decl. is also submitted with this filing.

discovery of, and access to, Imagine's current R&D efforts. In other words, BigBand wants to peer over Imagine's shoulder as Imagine works on products that did not exist— and therefore could not have formed the basis for any reasonable investigation—at the time the suit was originally filed. If BigBand has its way, it will keep its positions open, vague and unfocused for as long as possible to cast a cloud on all of Imagine's future products, no matter what they turn out to be, and no matter that BigBand currently has no factual basis to claim Imagine's future products infringe BigBand's patents.

For that reason, the Court must call BigBand's bluff and force BigBand to lay its cards on the table. BigBand must be ordered to immediately limit its claims and provide a 30(b)(6) witness to explain how these limited claims are infringed. This is especially true since expert reports will soon be due and preparing experts and pro*viding* expert reports addressing 524 claims will be next to impossible. That is the only cost-effective and reasonable way to focus the lawsuit.

## II. ARGUMENT

### A. BigBand's Argument That It Cannot Limit Claims Until It Has More Discovery Is a Stalling Tactic

As described in Imagine's opposition to BigBand's co-pending motion to compel, by December 2007,[4] Imagine had already produced to BigBand nearly all of the technical documents regarding Imagine's ICE Broadcasting System (Imagine's only commercial

---

[4] A chart showing the relevant dates, including the timing of the lawsuit in relation to the time when Imagine's sole commercial product became available and the timing of production of core technical documents, is attached hereto as Appendix A.

3

product) that were in the possession of its senior technical and executive staff.[5] Imagine has since followed up with another, smaller production from the same sources that included <u>new or current</u> documents created by Imagine's technical team as recently as May 2008.[6] Both of these productions included the kinds of testing documents, feature matricies, and user manuals (to the extent Imagine has such documents) that BigBand purports to need as complained by BigBand, both in its motion to compel and in its opposition to Imagine's motion to limit claims.[7] The production also includes current research and development documents, to which in fairness BigBand should not be entitled.[8] But even though BigBand has had the bulk of Imagine's technical documents for months, and should have been able to do its infringement analysis several times over by now, BigBand has still not agreed to limit its claims. Nor has BigBand supplemented its own infringement contentions, which, in their present form, leave more than half of BigBand's asserted claims without any particular allegations for at least one of the required claim elements. This strongly suggests that BigBand *cannot* make out a case of infringement against Imagine's only commercial product (the ICE BROADCAST SYSTEM) and that BigBand is instead playing for time and stringing out the litigation. Apparently, BigBand's plan is to keep all of its patent claims alive for as long as possible—in the hope that some as-yet unsold Imagine product might possibly infringe. The likely result of such an unfair strategy is that BigBand's impermissibly vague and overbroad claims will impede Imagine's growth, infect Imagine's possible future venture

---

[5] *See* Gutman Decl., ¶¶ 9, 10.
[6] *See Id.*, ¶ 16.
[7] *See Id.*, ¶ 10.
[8] *See Id.*, ¶ 15

capital funding, and smother any market interest in any future Imagine products. The Court should put a stop to BigBand's unfair strategy.

As part of its approach, BigBand's opposition to Imagine's motion to limit its claims is an exercise in moving the proverbial goalposts. Once, BigBand took the position that it needed the prior art being asserted by Imagine to narrow its claims. This was provided long ago. Then, BigBand said it needed invalidity claim charts showing how that prior art is applied against its claims.[9] This was also provided, on May 22, 2008. Now BigBand insists, for the first time in its opposition, that it must now have both Imagine's computer source code and a production of Imagine's "electronic documents" (*i.e.*, email) before it can consider limiting its claims. This argument has the whiff of expediency. Imagine's source code was never specifically asked for in BigBand's first and only set of document requests (including Document Request Nos. 22-24, which are the subject of BigBand's Motion to Compel). Moreover, BigBand <u>never made production of the source code an issue in the concurrently filed Motion to Compel</u>, which shows the weak nature of its newly formed complaint that it needs this information to narrow the claims.

BigBand's apparent disingenuousness on the issue of source code and email is further revealed by the fact that Imagine made proposals to BigBand for the production of such materials over two weeks ago, both of which have gone unanswered. Indeed, the first time BigBand asked for the source code is in a April 24, 2008 letter. In meet and

---

[9] While BigBand has been complaining about Imagine's alleged refusals to produce documents, it recently (May 27) revealed that it really has been stonewalling when it admitted that it needs to produce 200,000 additional pages next week. *See* Declaration of Mary Matterer in Support of BigBand's Motion to Limit Claims, Ex. 5.

confer sessions following receipt of that letter, Imagine advised it would investigate the issue and respond with a proposal. Imagine did so, providing a "Source Code Protocol" to deal with the issues framed thereby as set out in our May 15, 2008 letter. BigBand has ignored this proposal.[10]

As discussed in Imagine's opposition to BigBand's motion to compel, in contrast to <u>core technical documents</u> which have been the subject of a diligent search, the contents of which were produced in late December 2007, Imagine offered to collect and review <u>email</u> from its senior technical and executive staff based on a keyword search. Imagine gave BigBand a list of the search terms Imagine planned to use and invited BigBand to propose its own terms to be added to the list. As of this writing, BigBand has neither objected to Imagine's list of terms nor offered any of its own.

Finally, BigBand's insistence on seeing complete documentation on concepts and prototypes that are still under development at Imagine is improper and should be rejected as a reason not to limit the number of BigBand's claims. In its opposition, BigBand says that Imagine's prototypes "may" infringe BigBand's patents, without substantiating this assertion in any way. Simply put, BigBand has no idea whether these products infringe one of its patents—nor could it, because these products have not taken any final form for BigBand to analyze. Tellingly, this kind of guesswork would be an insufficient basis to bring a patent infringement lawsuit in the first place. Yet, Plaintiff BigBand asks the Court to give it an open-ended access card to Imagine's research and development labs,

---

[10] BigBand complains that if the schedule proposed by Imagine (to which BigBand has yet to respond) is adopted, BigBand will have to wait for another month to see it. If BigBand signs on to the Source Code protocol and agrees to limit its claims within 10 days or another reasonable time, we can produce the source code next week.

and then hold off on narrowing Plaintiff's claims, just in case Imagine makes something that does infringe. The Court should reject the request. Instead, the Court should order BigBand to select ten claims to proceed on, and impose a document discovery cutoff date, after which Imagine does not have to provide documents about its on-going research and development.

As to BigBand's argument that it needs non-infringement contentions on all 524 claims before it can narrow them, that indeed puts the cart before the horse, as dealt with in Imagine's opposition to the motion to compel. Imagine already advised BigBand that at least one element of each independent claim is not found in Imagine's only product.[11]

### B. Limiting BigBand to Ten Patent Claims Now is Appropriate, Fair, and Necessary to Move the Case to an Expeditious Resolution.

Though BigBand protests that requiring it to limit the number of asserted claims at this stage of the proceedings is unreasonable and unfair, its steadfast refusal—even in opposition to Imagine's motion—to propose either a definite timetable for doing so or a specific number of claims that it would agree to assert amply demonstrates why it is incumbent upon the Court to "intervene" and impose order on these proceedings. This is precisely the lesson of this Court's ruling in *Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions USA, Inc.*, No. 04-0038 JJF, 2005 WL 2304190 (D. Del) (when parties cannot agree to limit the number of asserted claims to a reasonable number,

---

[11] Imagine has indeed indicated why it does not infringe BigBand's independent claims, in that its only product does not include:
    (a) a session manager,
    (b) aggregate bandwidth of received packets exceeds the bandwidth of the limited bandwidth media,
    (c) select basic media data units to be modified in response to a modification priority,
    (d) "modification priority", and
    (e) "non addressable stream output port."

"the Court must intervene"). Moreover, the Federal Circuit has discussed how the "risk that a jury will be unduly influenced by the *mere number of claims* presented by the plaintiff" can itself serve as "justification for a court's attempting to limit the number of claims." *ReRoof America, Inc. v. United Structures of America, Inc.,* 1999 U.S. App. LEXIS 20788 (Fed. Cir. Aug. 30, 1999) at *15 (emphasis added) (upholding the district court's decision to limit the number of claims to five "representative" ones). Therefore, courts are empowered to limit the number of asserted patent claims for a multitude of reasons.

BigBand's efforts to distinguish *Fenster* cannot obscure the central insight of the case: it is simply "unreasonable" to allow patent plaintiffs to keep large numbers of claims in issue indefinitely. *Id.* at *3. And it is not enough for plaintiffs to promise that they will limit the number of claims "after full discovery." *Id.* Imposing limits *before* discovery is concluded is vital for focusing discovery and preventing the kind of expensive, never-ending safari that BigBand seems to have in mind here.

BigBand's attempt to distinguish *Fenster* not only fails to grasp the big picture, it is wrong on the particulars too. First, BigBand argues that "unlike in *Fenster*, BigBand agrees the number of claims should be limited."[12] But in fact, the plaintiff in *Fenster* also indicated that it would "likely limit [the number of asserted claims] after full discovery." *Id.* That argument, which is remarkably similar to BigBand's apparent position here, was rejected by the Court. *Id.* BigBand also tries to distinguish itself from the plaintiff in *Fenster* by arguing that, there, "the plaintiffs made no effort to limit the number of claims

---

[12] BigBand's Answering Brief in Opposition to Imagine's Motion to Limit Claims, DI #55 at 6.

8

at issue…"[13]  That, of course, is precisely why Imagine has brought this motion against BigBand here:  BigBand has not only made "no effort" to limit its asserted claims on its own, it has also rejected Imagine's proposals for doing so without so much as making a counter-offer.

Finally, BigBand resists Imagine's motion to limit its number of asserted claims to ten by employing a classic bootstrap argument.  Though this Court ruled that ten claims was a fair (if arbitrary) number in patent cases such as this, BigBand argues that that number is unreasonable here because it represents an unacceptably small fraction of the total number of claims originally asserted.  But letting a patent plaintiff dictate the number of claims it will ultimately assert simply by controlling the total number of claims it asserts in the first instance leaves the fox in charge of the henhouse.  If BigBand's argument—that the number of its final asserted claims should be determined by a ratio to its originally asserted claims—is accepted, then patent plaintiffs will be encouraged to assert as many claims as possible up front, no matter how frivolous, in order to buy themselves a larger number of final claims.  Such a result would not only provide an incentive for plaintiffs to be less mindful of Rule 11's pre-filing investigation requirement (which Imagine contends BigBand has already disregarded here), it would also dramatically increase the costs of defense and would likely also lead to increased motion practice.  For all those reasons, BigBand's percent-based argument should be rejected in favor of the absolute number approach (ten claims) employed in *Fenster*.

---

[13] *Id.*

## III. CONCLUSION

The set of claims-at-issue must be narrowed to allow the case to be focused and enable Imagine to effectively mount a defense to this lawsuit. In summary, the Court should put an end to BigBand's stalling tactics by limiting the number of claims in issue to ten, ordering BigBand to submit to Imagine's 30(b)(6) deposition, and putting an end to BigBand's open-ended attempt to examine Imagine's research and development program.

Date: May 30, 2008

/s/ Mary Matterer
MARY B. MATTERER (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 302-888-6800
Facsimile: 302-571-1750
Email: mmatterer@morrisjames.com

OF COUNSEL:
JOHN M. BENASSI (Cal. Bar No. 74137)
ALEXANDER BRAINERD (Cal. Bar No. 42722)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92122-1246
Telephone: 858-450-8400
Facsimile: 858-450-8499
Email : john.benassi@hellerehrman.com

Attorneys for Defendant and Counterclaim Plaintiff
IMAGINE COMMUNICATIONS, INC.

# APPENDIX A

**APPENDIX A**

**PRODUCT AND DISCOVERY TIMELINE**

| Date | Event |
|---|---|
| 2006 | First Round of Financing – Big Band – accuses Imagine of trade secret theft (settled with mutual release dated March 5, 2006). (Howard Decl. ¶ 4) |
| May 2007 | Imagine asks Big Band to visit its research facilities to see how different its anticipated product is after Big Band threatens patent suit. (Howard Decl. ¶¶ 6-7) |

June 5, 2007 Complaint Filed

| Date | Event |
|---|---|
| June 5, 2007 | Big Band files suit during second round of financing before Imagine releases details or launches its product. (Gutman Decl. ¶ 5) |
| June 13, 2007 | Second Round of Financing - Imagine for the second time asks Big Band to visit its facilities and "get technical teams together" to show why product does not infringe. (Howard Decl. ¶¶ 8-9) |
| August 27, 2007 | Big Band serves its Requests for Production including No. 22, 23 and 24 asking for documents relating to products not in existence and not commercialized including SDV and QOD products. (Gutman Decl. ¶¶ 11-13) |
| October 21, 2007 | Imagine serves its objections and responses. |
| December, 2007 | Imagine launches its only product to date, its ICE BROADCAST SYSTEM (Gutman Decl. ¶ 6) |
| December 5, 2007 | Imagine produces 20,305 pages. At this time only product commercialized was BROADCAST PRODUCT. |
| February 2008 | Imagine starts development of Staging Processor for SVD and/or VOD |
| May 2008 | Still only one commercial product (ICE BROADCAST SYSTEM) staging process or product for SDV and/or VOD hopefully released Q3/Q4 2008 |

# GUTMAN DECLARATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIGBAND NETWORKS, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>IMAGINE COMMUNICATIONS, INC.,<br><br>Defendant and Counterclaim Plaintiff. | DECLARATION OF RON GUTMAN IN SUPPORT OF IMAGINE COMMUNICATIONS, INC.'S OPPOSITION TO BIGBAND'S MOTION TO COMPEL FURTHER RESPONSES TO WRITTEN DISCOVERY<br><br>Civil Action No. 1:07-cv-00351 *** |

I, Ron Gutman, declare as follows:

1. I am the Chief Technology Officer of Imagine Communications, Inc. ("Imagine"). I have personal knowledge of the facts set forth herein, and could and would testify to them if called as a witness.

2. Imagine is a small early-stage technology company developing a platform to allow broadband operators to improve bandwidth and enhance video quality. Until recently Imagine was mostly a software company.

3. Imagine currently has only 83 employees.

4. As a start-up company with limited financial resources and a small number of employees, Imagine does not extensively document its research and development, product design, or product modification efforts. Imagine cannot afford the big-company bureaucracy to do this.

5. I supervised the collection of documents within Imagine in response to BigBand's Requests for Production of Documents in this lawsuit, which were served August 27, 2007 before Imagine ever had a commercial product.

1

6.    At the time BigBand Networks ("BigBand") filed its lawsuit in June 2007, Imagine had no commercial product and only one possible product candidate. Additionally, there was no publicly available information on the detailed operation of any of Imagine's contemplated products.

7.    Even at the present time, Imagine has only one commercially-available product, the Imagine ICE Broadcasting System, which was released in December 2007, six months after the filing of the lawsuit and after BigBand's Document Requests were served on August 27, 2007.

8.    At the time the lawsuit was filed, Imagine had published some white papers, but those papers related to Imagine's technology area generally, not to the specific operation of Imagine's products. Imagine had distributed a brochure that BigBand apparently relies upon, but that brochure did not describe a product that Imagine has actually commercialized. Likewise, the information available on Imagine's website was deliberately restricted to general information about Imagine's technology area and did not describe the product Imagine had actually commercialized.

9.    In response to BigBand's requests served August 27, 2007, Imagine collected and made available to its counsel all product design documents and all communications from senior technical staff and executives of the company.

10.   At the time BigBand served its Interrogatories and Requests for Production on August 27, 2007, we were trying to get our only product out, the Broadcast System using the ICE and ICE-Q software, and we produced all technical documents regarding that single product including testing documents, feature matrices and user manuals to the extent those were completed. I understand that production took place on December 5, 2007 and consisted of over 20,000 pages.

11.   BigBand has recently requested and asked the Court to order Imagine to produce additional types of technical documents. For example, I have reviewed the April 24, 2008 letter from BigBand's counsel explaining the types of documents that BigBand is

2

seeking. In response to this letter, I have conducted an additional search for documents, of the type BigBand has requested, within Imagine, but, as mentioned below, there are no documents as to at least one of the apparently accused products, and two more are not commercially available.

12. BigBand has complained that we have not produced documents relating to our SDV Gateway (Switched Digital Video Gateway), <u>but this product is not currently available and is not being developed at this time</u>.

13. BigBand also complains we did not produce documents regarding what they call our QOD GATEWAY for VOD, which we now call VOD ICE GATEWAY or VOD GATEWAY. We started to work on this potential product, our VOD ICE GATEWAY, but this is not a commercial product and is still in the prototype/research and development stage.

14. BigBand has also complained that we have not produced documents relating to a STAGING PROCESSOR for SDV (Switched Digital Video). On or about February 2008, Imagine started developing a prototype for this contemplated product. We now only have a prototype of that product. We hope to release the product commercially in the third or fourth quarter of 2008, so there are not many documents regarding this.

15. BigBand has repeatedly asked to see "current" documents on all of our "accused products," which it does not define, but which apparently <u>includes our current and future research and development</u>. To save attorney's fees, we so far produced all of our technical documents, but we object to producing future R&D documents on contemplated products or non-commercial products. BigBand should not be allowed to continue to use this lawsuit to learn where Imagine is going in this competitive business and technological market.

16. The recent document productions, Bates IMG0020393 to IMG0020636, include our most recent documentation on not only our current products, but also all contemplated products, which we produced to save attorneys' fees. These documents were not created until 2008, well after BigBand's document requests. Although Imagine

3

DEC OF R. GUTMAN ISO IMAGINE'S OPP TO BIGBAND'S MOT TO COMPEL FURTHER RESPONSES TO WRITTEN DISCOVERY

produced these documents in an effort to avoid this costly motion practice, Imagine should not continue to be subjected to BigBand's open-ended and oppressive document demands.

I declare under penalty of perjury under the laws of the Untied States of America that the foregoing is true and correct.

Executed this 23, day of May, 2008, at San Diego, California.

Ron Gutman, CTO
Imagine Communications Inc.

**Briefs, Responses and Replies**
1:07-cv-00351-JJF BigBand Networks Inc. v. Imagine Communications Inc.
PATENT, PaperDocuments, VACANTJUDGESHIP

U.S. District Court

District of Delaware

**Notice of Electronic Filing**

The following transaction was entered by Matterer, Mary on 5/30/2008 at 11:22 AM EDT and filed on 5/30/2008

**Case Name:** BigBand Networks Inc. v. Imagine Communications Inc.
**Case Number:** 1:07-cv-351
**Filer:** Imagine Communications Inc.
**Document Number:** 69

**Docket Text:**
**REPLY BRIEF re [47] MOTION to Limit Claims filed by Imagine Communications Inc.. (Matterer, Mary)**

**1:07-cv-351 Notice has been electronically mailed to:**

Jack B. Blumenfeld    jbbefiling@mnat.com

Karen Jacobs Louden    kjlefiling@mnat.com

Mary Matterer    mmatterer@morrisjames.com, shadley@morrisjames.com, tpullan@morrisjames.com

**1:07-cv-351 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=5/30/2008] [FileNumber=575048-0]
[8b84aa3817730ea8ee1421378fc9dd5d3e5e98d7f307ce05987ec33116ba7c28dd2d
74be6b6a481ca5c9cb0ea21c612d1b274a036c1bc2f45ffcc5f7b45d0a92]]